Vol. XV, Page 2977

1                    UNITED STATES DISTRICT COURT

2
                  FOR THE DISTRICT OF CONNECTICUT
3

4

5     – – – – – – – – – – – – – – x
                                 :
6     UNITED STATES OF AMERICA    :   No.  3:15CR155(RNC)
                                 :
7              vs.               :
                                 :
8     ROSS SHAPIRO, ET AL,        :
                                 :   HARTFORD, CONNECTICUT
9                   Defendants.   :   June 6, 2017
                                 :
10    – – – – – – – – – – – – – – x

11

12
                       JURY TRIAL – VOLUME XV
13

14        BEFORE:

15             HON. ROBERT N. CHATIGNY, U.S.D.J.

16

17

18

19

20

21                                  Darlene A. Warner, RDR–CRR
                                    Official Court Reporter
22

23

24

25

1    APPEARANCES:

2
         FOR THE GOVERNMENT:
3
              U.S. ATTORNEY'S OFFICE-NH
4             157 Church Street
              P.O. Box 1824; 23rd Floor
5             New Haven, Connecticut 06510
              BY:  LIAM BRENNAN, AUSA
6                  HEATHER L. CHERRY, AUSA
                   DAVID E. NOVICK, AUSA
7
         FOR ROSS SHAPIRO:
8
              PETRILLO, KLEIN & BOXER LLP
9             665 Third Avenue
              22nd Floor
10            New York, New York 10017
              BY:  GUY PETRILLO, ESQ.
11                 JOSHUA KLEIN, ESQ.
                   LEONID SANDLAR, ESQ.
12                 MIRAH CURZER, ESQ.

13       FOR MICHAEL GRAMINS:

14            GREENBERG TRAURIG
              Metlife Building
15            200 Park Avenue
              New York, New York 10166
16            BY:  MARC L. MUKASEY, ESQ.
                   ROBERT S. FRENCHMAN, ESQ.
17                 JEFFREY B. SKLAROFF, ESQ.

18       FOR MICHAEL GRAMINS:

19            GREENBERG TRAURIG
              Metlife Building
20            200 Park Avenue
              New York, New York 10166
21            BY:  MARC L. MUKASEY, ESQ.
                   ROBERT S. FRENCHMAN, ESQ.
22                 JEFFREY B. SKLAROFF, ESQ.

23

24

25

1     APPEARANCES (CONTINUED):

2

3          FOR TYLER PETERS:

4               ALSTON & BIRD, LLP-NY
                One Atlantic Center
5               1201 West Peachtree Street
                Atlanta, Georgia 30309-3424
6               BY:  MICHAEL L. BROWN, ESQ.
                     LEANNE M. MAREK, ESQ.
7
                BRAFMAN & ASSOCIATES, PC
8               767 Third Avenue, 26th Floor
                New York, New York 10017
9               BY:  ALEX SPIRO, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          9:30 A.M.

2

3          THE COURT:  Good morning.  I've received three

4    letters overnight and this morning.  The defense is

5    seeking curative instructions with regard to the

6    government's rebuttal.

7              I've read the letters.  Is there anything that

8    anybody wants to add from the defense side?

9              MR. BROWN:  No, Your Honor.  We got what I

10   assume is a proposed additional instruction.  I'd like to

11   talk about it, but I have nothing else to add up to the

12   argument.

13             MR. PETRILLO:  Same.

14             MR. MUKASEY:  Same with us, Judge.  I just have

15   a question.

16             I know the proposed instruction that Your Honor

17   had your law clerk give us deals with the "willfully"

18   issue.  I was wondering whether you were contemplating a

19   proposed instruction on the "universe of trades" issue.

20             THE COURT:  Yes.  I've read your letter and I

21   understand your position.

22             MR. NOVICK:  Good morning, Your Honor.  I don't

23   have any need to be heard further on the question raised

24   by Mr. Brown.  We did have a chance to respond to the

25   letter.  If Your Honor wants -- and I do also have

1    comments on the proposed instruction.

2          I can respond to Mr. Mukasey's letter or I can

3    wait until we've dealt with the willfulness.  Whatever the

4    Court prefers.

5          THE COURT:  Why don't we address Mr. Mukasey's

6    letter and get that out of the way.

7          MR. NOVICK:  Sure.

8          So, Your Honor, as I started to say yesterday, I

9    could not disagree more with Mr. Mukasey's position that

10   we have somehow violated an agreement with the defense.

11         I think, number one, Mr. Gramins' argument to

12   the jury was fair and based on the evidence that has

13   already been admitted.  The questions were asked and not

14   objected to during the course of the trial; that is, this

15   was a daily occurrence on the desk and this was something

16   that was contemplated by the parties.  The defense

17   understood that we were going to be asking those

18   questions, as we did.

19         I also think, interesting that in Mr. Mukasey's

20   letter he really glosses over or doesn't mention at all

21   what Mr. Klein actually said in his closing argument.  So

22   I went back and looked at it and pulled it.  It's actually

23   much more egregious, in the government's view, than we had

24   discussed yesterday.

25         What he says is, talking about profit motive:

1          And what evidence do you have about the amount

2     of money that these trades added up to, meaning the trades

3     presented to the jury.

4          I suspect all the trades put together are

5     substantially less than $5 million.

6          And remember those trades occurred from 2009 to

7     2012.  That's four years.  In any given year, the number

8     is far lower than what Mr. Raiff said would even stand a

9     chance of influencing anybody's compensation.

10         I mean, Your Honor, we have to be able to rebut

11    that.  And I think what Mr. Brennan did was the bare

12    minimum of what we were entitled to do to rebut the

13    suggestion that the only bad trades out there, the only

14    misrepresented trades -- and Mr. Brennan didn't even go

15    that far -- but the only bad trades out there, were the

16    ones in the evidence.

17         To the extent there was an agreement in the way

18    Mr. Mukasey contemplates it, Mr. Klein drove a Mack truck

19    through that agreement by basically suggesting that we

20    really only had this little universe of trades that we had

21    put in and that because it's so small, relatively

22    speaking, it couldn't possibly have moved the needle.

23    It's just blatantly unfair.

24         We could have gotten up and objected or asked

25    for a curative instruction.  We chose to rebut it.  And I

1    think it was in a way consistent with evidence and in a

2    way that it was the bare minimum of what the government

3    was entitled to do in that circumstance.

4          THE COURT:  We each have our own perspective.

5    Hopefully mine is appropriately impartial.  I'm striving

6    to preside impartially.

7          From my perspective, what happened here should

8    not have happened.  At a minimum, you should have raised

9    this issue with me and the defense in advance of the

10   rebuttal.  For the government to proceed as it did without

11   giving notice to me is, in my opinion, well short of the

12   optimal way to proceed in a case of this nature.

13         We've been at this for almost a month after

14   lengthy pretrial proceedings involving many, many, many

15   lengthy and detailed motions in limine, and this was the

16   subject of an important motion in limine, and an agreement

17   was reached; and while, yes, Mr. Klein's argument on

18   motive certainly causes legitimate concern from the

19   perspective of the government, it does not give the

20   government a license to go ahead and do what it did

21   without notice to the Court.

22         The statement "we could be here for six months

23   if we bring you every trade" is a strong statement and it

24   needs to be addressed.

25         The defendants took the position in their

Vol. XV, Page 2984

1    motions in limine that it would be unfair and misleading

2    to leave the jury with the impression that every trade was

3    tainted.  The representation was made that there were

4    thousands of trades during the relevant period that were

5    not tainted, and the defendant said that to put things in

6    proper perspective, they would need an opportunity to

7    prove that.  We managed to avoid that very time-consuming

8    process by means of an agreement that was honored more or

9    less fully until the rebuttal when the statement was made

10   "we could be here for six months if we bring you every

11   trade."

12           So I do think I need to respond to that request

13   for a curative instruction submitted by Mr. Mukasey, and I

14   think that his suggested language is pretty good.  I don't

15   think it's unfairly prejudicial in any way.

16           The fact of the matter is, the jury is supposed

17   to consider only the trades charged in the indictment.

18   That's what they're here for.  They're not here to

19   consider other trades.

20           MR. NOVICK:  Your Honor, the evidence that -- I

21   think the evidence that Mr. Brennan talked about and

22   elicited during trial that this was a daily occurrence was

23   contemplated in the motions, talked about it, defense

24   understood we were going to be talking about that.

25           I think it's fair to -- nobody is commenting on

1    how many of the trades, relatively speaking, were bad or

2    not bad.  There was evidence at the trial that was not

3    objected to that came in that said that this was a daily

4    occurrence.  And then for the defense to get up and

5    suggest what they did -- I understand Your Honor's point

6    and certainly take it, and am admonished by it.  I don't

7    think it was done in bad faith.  I think it was done with

8    a view to cure or rebut -- I would say more than cure --

9    rebut an argument that we fairly believed or that we

10   believed, the government believed, the defense had made,

11   and an unfair one at that.

12          And so I think I take the Court's point.  It

13   would be unfair on the other side to suggest that the jury

14   can't consider that fair testimony that came in.

15          THE COURT:  Shall I tell the jury that the

16   parties have stipulated that the trades that are before

17   the jury are not the only trades that occurred during this

18   period of time that include statements along the lines of

19   what we have been dealing with, but there were also

20   thousands of trades that had no such statements?

21          MR. NOVICK:  The thing is, Your Honor, the whole

22   point is, we don't know what those thousands of other

23   trades say or don't say.  What we do know is what the

24   witnesses testified to; and that's all Mr. Brennan said,

25   was that it was a daily occurrence.

1            THE COURT:  In Mr. Mukasey's letter at page 3 he

2    states the following:  "Had the government confined itself

3    simply to referring to the testimony of Mr. Dinucci and

4    Mr. Feely, perhaps its rebuttal would have passed muster;

5    however, the government didn't do that.  Instead the

6    government told the jury it had additional evidence in its

7    possession it had not introduced."

8            MR. NOVICK:  That's an implication from what

9    Mr. Brennan said and it's not what he said.

10            THE COURT:  I'll give you a chance to suggest

11   what changes should be made to Mr. Mukasey's proposed

12   language on that point, but I am going to comment on it.

13            How about with regard to charities?

14            MR. NOVICK:  Your Honor, I think it was fair

15   argument.  Three of the four witnesses, victim witnesses,

16   testified they managed endowment money.  I mean, what more

17   do I need to say?

18            To satisfy my own belief of what "endowment"

19   means, I went on the internet and looked up "endowment,"

20   which is funds for the purpose of non-profit institutions.

21            I think that's fair argument, Judge.

22            THE COURT:  Would it be fair to say this case is

23   all about widows and orphans and everyday investors like

24   you and me, regular Joes who give their money to money

25   managers?  That's what this case is about?

```
 1              It's not about sophisticated institutional

 2     investors that control billions of dollars?  It's about

 3     you and me?  Would that be fair argument?

 4              MR. NOVICK:  I think fair argument, Judge, on

 5     the flip side is not to say that the people -- they, Your

 6     Honor, got up in every one of their summations, every one

 7     of their summations, and said that these people didn't

 8     come in here looking like victims because they're

 9     sophisticated investors, right?

10              That is unfair on the other side.  Because when

11     they are saying something about the demeanor of these

12     witnesses, that they're somehow not upset because it's no

13     big deal, that's suggesting somehow that these people are

14     the ultimate victims when money is stolen.

15              They're just representatives of these companies

16     that manage other people's money.

17              THE COURT:  Representatives of companies that

18     benefit from the lack of transparency in the market, as

19     was explained by a witness, because it allows them to make

20     huge sums of money on trades exploiting the lack of

21     information about the price they paid.  That's who we're

22     talking about, Mr. Novick, we're not talking about widows

23     and orphans.

24              MR. NOVICK:  Your Honor, that's the defense

25     argument.  That money --
```

1          THE COURT:  That's the testimony of the

2     government's witnesses.

3          MR. NOVICK:  Excuse me, Your Honor?

4          THE COURT:  That's the testimony of the

5     government's witnesses.  I think it was Mr. Marks who

6     said -- I could be wrong -- but I think it was Mr. Marks

7     who said, yeah, we benefit from the lack of transparency.

8          MR. NOVICK:  The government's not suggesting

9     anything about any of that, Your Honor.  What we're

10    suggesting is that when they get lied to -- I don't think

11    that because there's a lack of transparency that it gives

12    the defendants a license to lie, and when the lies are

13    made, the question is:  Are there victims?

14          And I'm not suggesting Mr. Marks is not a

15    victim, Mr. Abbas is not a victim.  The victims are the

16    investors, the victims are the ones who actually own the

17    money.

18          THE COURT:  Is there evidence that any of the

19    people who have testified here as victims were dealing

20    with money belonging to charities?

21          MR. NOVICK:  Yes.  Endowments.  In all three of

22    the four cases.  In the fourth one, I think only because

23    we didn't ask.

24          MR. MUKASEY:  I would say that Harvard

25    University has a 40 billion-dollar endowment and it's not

1    a charity by any stretch.

2              THE COURT:  Let me ask the government to give

3    some thought to the possibility that what was said is a

4    problem and it needs to be addressed and not just left

5    there.  Maybe the government needs to think about what

6    should be done to avoid having prejudicial error in this

7    case.  That would be helpful to me.

8              With regard --

9              MR. NOVICK:  Your Honor --

10             THE COURT:  I'll give you a chance to do that,

11   Mr. Novick.  I told the jury we would start with them at

12   10:00 today.

13             MR. NOVICK:  I'm sorry.

14             THE COURT:  With regard to willfulness, I don't

15   know if Mr. Brennan intended to differ with me and in

16   effect take it upon himself to overrule me on what the law

17   provides.  I don't need to assess that.  But I do

18   understand the defendants' position that this is what it

19   seemed to be.

20             The government is entitled to argue as it

21   wishes, but it's not entitled to in effect contradict me

22   on my statement of the law, particularly when, as I have

23   explained more than once, the willfulness element of

24   securities fraud poses a real challenge for a Court trying

25   to instruct a jury.  So I think I need to address that

1    too.

2              I've drafted something this morning that I think

3    is a good start.  If you have comments, I'd be happy to

4    hear them.

5              MR. BROWN:  I do, Judge.

6              As an initial one, I think that there ought to

7    be some introductory language to indicate that this

8    instruction is a supplemental instruction precipitated by

9    the government's argument that the jury does not -- that

10   the instructions do not state that the defendants have to

11   know their conduct was illegal, or something like that.

12             THE COURT:  I will instruct the jury that I'm

13   giving them a supplemental instruction that does not in

14   any way detract from or replace the instructions

15   previously given, instead it amplifies the instructions

16   previously given.

17             MR. BROWN:  The only reason I would ask that

18   there be some mention of the government's rebuttal was

19   because they told the jury that we misstated the law and

20   so I would like it to be tied to that.

21             THE COURT:  I'll do something.

22             MR. BROWN:  And then I just have two very brief

23   suggestions, and that is in the third paragraph where it

24   says, "he knew was prohibited," if we could add the words

25   "by law."

1          THE COURT:  All right.

2          MR. BROWN:  And the third paragraph from the

3     bottom where he said "knew his conduct was wrongful," and

4     if we could replace the rest of that sentence with

5     "prohibited by law" again.

6          THE COURT:  I'd like to help you, Mr. Brown, but

7     my problem is I have to follow Second Circuit law, and

8     that's what I'm doing.

9          MR. BROWN:  Okay, thank you, Judge.

10          THE COURT:  Mr. Novick, before you begin, let me

11     ask you a question:  Are you confident that the jury can

12     convict these defendants because they knowingly violated

13     the law or do you lack that confidence and you want the

14     jury to convict them even though they didn't know they

15     were violating the law?

16          MR. NOVICK:  I would say the former, Your Honor.

17          THE COURT:  Right.  So why are we having this

18     wrestling match over and over again?

19          If the government's submission to the jury is

20     that these people are criminals who knowingly violated the

21     law, why does it matter to you so much that the jury be

22     informed about how they didn't really need to know that

23     their conduct was illegal?  Why?

24          MR. NOVICK:  Your Honor because --

25          THE COURT:  Why, Mr. Novick?

1          MR. NOVICK:  I'm going to answer the question.

2          THE COURT:  Please.

3          MR. NOVICK:  Yes.  Because I believe firmly that

4     the Second Circuit law under Kaiser does not require that

5     of us.  And while I am confident that we have done more

6     than we need to do in this case, as we have said

7     repeatedly, I am not willing to go a step further and say

8     let's instruct the jury in a way that -- and I --

9          Look, we can disagree, Your Honor, and I

10    appreciate it, and it's the Court's word that matters, and

11    I appreciate that, and I'm just trying to give Your Honor

12    my take; and I hope you understand that.

13         THE COURT:  Is there a Second Circuit case that

14    says under 10(b)(5) in a factual situation like this, the

15    government does not have to prove that the defendant knew

16    his conduct was illegal?

17         MR. NOVICK:  I believe, Your Honor --

18         THE COURT:  Not a tender offer.  This case.

19         MR. NOVICK:  Your Honor, I believe the closest

20    thing we have that says -- that stands for this principle,

21    as I've said repeatedly, is Kaiser.

22         THE COURT:  Tender offer case, right?

23         MR. NOVICK:  Yes, Your Honor.  But I think the

24    principle is essentially, if there's a case involving a

25    rule like insider trading, the Second Circuit says that

1    would be different.  But in a case like this where I think

2    that the issue is not a rule but something that is about a

3    the law, 10(b)(5), deceptive practices like this, that it

4    doesn't require that, and I think Kaiser's -- I think

5    Tagliaferri, which accords with Kaiser.

6         THE COURT:  And that would be because this

7    conduct is so inherently immoral and egregious, so

8    palpably offensive that there's no need to worry about it.

9         MR. NOVICK:  Your Honor, I wouldn't go to that

10   degree of -- I'm not trying to be that kind of simplistic

11   about it.

12        THE COURT:  Oh.  Although the government argued

13   in rebuttal if you lie to take money, that's it, that's

14   all you need to do, period.  Lie to take money, period,

15   full stop; that's all you need to do.

16        MR. NOVICK:  Maybe I misspoke in terms of what I

17   meant, Your Honor.

18        When I say -- I'm not trying to be as -- might

19   be I am trying to be as simplistic about it.

20        When it's a straightforward violation, in other

21   words, it's a case about -- it's not a case about insider

22   trading, in other words some sort of more arcane esoteric

23   rule, it's a case about lying; and that's what it is.

24        THE COURT:  It's about this case is not a simple

25   case.  It is undisputed that this market was rife with

1    misrepresentation.  It is undisputed that

2    misrepresentation affected negotiations as a matter of

3    course.  You have people like Mr. Chao who didn't realize

4    that what he was doing was a crime.

5              So we've talked about speeding, we've talked

6    about the penalty box.  Yeah, if you are going 70 and you

7    get stopped, you can be ticketed if the officer decides to

8    ticket you.  If you're going 120, you can be arrested and

9    taken to jail.  Why?  Because one is really egregious and

10   one is socially dangerous to the point where it's a

11   serious crime.

12             Similarly, in hockey, you can trip, hook, hold,

13   you can even fight, and you'll get sent to the penalty box

14   for five minutes, maybe ten minutes, maybe you get a game

15   misconduct, but you're not going to be prosecuted for

16   assault in the local criminal court unless it's really,

17   really egregious.  Okay?

18             It seems to me what the government is saying is

19   this conduct is so egregious you don't need to prove that

20   they knew it was illegal.  Anyone would know this was

21   egregious; but Mr. Chao didn't.

22             So that's the context of this case, and I'm

23   trying to instruct the jury in a way that avoids error and

24   achieves justice.

25             If you have a comment on this proposal, I'd be

1    glad to hear it.

2             MR. NOVICK:  Sure, Your Honor.  I suppose we

3    could debate this all day.

4             THE COURT:  It's not my place to debate it.

5             MR. NOVICK:  I was going to say, Your Honor, I

6    don't think it's worth it.

7             The government's position on this charge, Your

8    Honor, first of all, we would say the charge that's

9    already been given is sufficient.  Short of that, we think

10   that paragraphs 2, 3 and 4 should be removed.

11            Our view is that this is a case about

12   willfulness for securities fraud, and starting with the

13   general principle is unnecessary here.  Let's instruct

14   them on willfulness in the context of securities fraud.

15            I'd also say with regard to the general

16   statement about due process is likewise unnecessary here.

17   I think due process is a different concept.  I think due

18   process says reasonable notice to people in the world, not

19   to these particular defendants.

20            I think it's very confusing to suggest that due

21   process requires some subjective knowledge.  It requires

22   that -- that's what due process essentially says, that the

23   rule be pronounced to the world in sufficient detail.  I'm

24   paraphrasing the case because I don't have it in front of

25   me.  So that someone of reasonable intelligence could

1   understand what is prohibited.

2          I think that's a legal determination, I think

3   that's about the statute and the charge.  And I think that

4   it's unnecessary to force the jury to consider the law in

5   context of due process.

6          So respectfully, Your Honor, I think if you want

7   to just go start with "in the context of securities law,

8   willfulness has been defined" the government, although we

9   again would prefer not, then we have less of an issue with

10  that.

11         THE COURT:  Less of an issue?

12         MR. NOVICK:  Respectfully.

13         THE COURT:  Okay.  I think that the paragraphs

14  that appear as the second, third and fourth paragraphs

15  provide helpful context for the instructions that follow.

16  They impart to the jury a sense of our values, and that's

17  important; the due process value of fair notice, which is

18  at play in this case.

19         MR. NOVICK:  But it's given, I believe, Your

20  Honor, that it's misleading in the sense that the due

21  process doesn't require that these defendants have

22  actual -- even though, again, we think that they do, to

23  have actual physical notice of what the law prohibits.

24  All it requires is that the law be sufficiently specific

25  so as to put the world on notice, the reasonable person on

1    notice, of what the law prohibits.  And that's not -- the

2    principle that's being articulated, respectfully, Your

3    Honor, here, I think that it's unnecessary.

4            I think that paragraphs 5, 6, 7 and 8, which

5    deal with the law that the jury has to consider in this

6    case are more than sufficient for the jury to do the job

7    it has to do here.

8            THE COURT:  Okay.  Well, thank you for your

9    comments.

10           Anything else?  Do you have any comments on the

11   language suggested by Mr. Mukasey?

12           MR. NOVICK:  One moment, please, Your Honor.

13               (Pause)

14           THE COURT:  Terri, would you please tell the

15   jury it will be another five minutes?

16           THE CLERK:  Sure.

17           THE COURT:  While you consider that, let me ask

18   about some other instructions.

19           It's my understanding that the government wanted

20   to have an instruction on failure to name a defendant and

21   uncalled witnesses, and I've added that back in.

22           Any objection to that?

23           Hearing none, let me ask you --

24           MR. PETRILLO:  Your Honor, I'm sorry to be late,

25   but I don't think that the issue of uncalled witnesses was

1   presented to the jury, so I wonder if that's just

2   confusing.

3              MR. NOVICK:  It was, Your Honor, specifically

4   related to I believe Mr. Rieger, among others.

5              THE COURT:  Okay.

6              MR. PETRILLO:  I think the point was that the

7   evidence is what it is and they don't have access to --

8   they weren't given access to other evidence.

9              MR. NOVICK:  That's the point of the uncalled

10  witness charge, Your Honor.

11             MR. PETRILLO:  We would object.

12             MR. SPIRO:  We would object, Judge.

13             THE COURT:  Okay.  I'll give the instruction.

14             Let me ask about cooperating witnesses and

15  non-prosecution agreements.

16             I prepared instructions that I will give if you

17  want me to, but in light of the closing arguments, I'm not

18  sure that these are instructions that are actually desired

19  by the defense and I don't want to give the instruction if

20  you don't want the instruction.

21             The instruction, in effect, tells the jury that

22  they need to view the testimony of these witnesses with

23  great suspicion; and as I listened to the closing

24  arguments, I heard counsel argue that the testimony of

25  these witnesses was generally truthful.

1           MR. MUKASEY:  May we have ten seconds?

2               (Pause)

3           MR. PETRILLO:  Your Honor, we withdraw our

4      request.

5           THE COURT:  All right, very good, thank you.

6           MR. NOVICK:  So just one last comment on the

7      willfully charge in response to Mr. Brown's comment.

8           Object to any focusing on the government's

9      statements insofar as I actually do believe, the

10     government, still believes that counsel for the defendant

11     also mischaracterized what the standard is and --

12          THE COURT:  I'm not going to indict anybody for

13     what they did in closing argument, so --

14          MR. NOVICK:  And then with regard to the other

15     instructions, I don't -- let me start with the --

16          THE COURT:  There's another concern that I have,

17     and I don't want to keep the jury waiting, but I'm

18     concerned that I need to make it clear to the jury that I

19     am not an advocate for the government.

20          The government has made prominent use of a

21     transcript excerpt that says:

22          "The Court:  Was this permissible prior to

23     Litvak?

24          "No, it wasn't."

25          That's been used in the government's closing and

1    in its rebuttal, and I don't want the jury to think that

2    I'm on the government's team and that I was asking key

3    questions for the government.

4         I haven't gone back to look at the transcript,

5    but I think I asked the question in order to move things

6    along when there were a series of comments being

7    interjected by various counsel.

8         In any event, I'm concerned about that and I

9    need to do something about that.

10        MR. PETRILLO:  We are as well, Your Honor,

11   because that was specifically referring to a compliance

12   manual as opposed to the law.

13        THE COURT:  So in addition to reminding the jury

14   that they're to draw no inferences from anything I've said

15   or done, what else should I say?  Any suggestions?

16        MR. NOVICK:  Your Honor, I would suggest the

17   most that I think would be appropriate here is a generic

18   instruction that says:  Any questions that I've asked you

19   should consider like any other question along with the

20   answer.

21        I think that's fair and impartial and doesn't

22   focus anyone on anything.

23        MR. PETRILLO:  I would say it does not satisfy

24   the willfulness requirement that the government shows or

25   argues that the defendants violated a provision of the

1    compliance manual or may have violated a provision of the

2    compliance manual.

3              MR. NOVICK:  I don't think that was the question

4    that was asked, Judge.  It had to do with permissibility

5    of representations in the pre-Litvak period.

6              I understood the Court's question in issue to be

7    different, which is:  What significance should the jury

8    draw from the fact that the Court asked the question.

9              So my suggestion would be what I just said,

10   which I think is straightforward, easier to follow.

11             THE COURT:  Okay.  Then with regard to

12   Mr. Mukasey's suggested language?

13             MR. NOVICK:  We're talking specifically about

14   the uncharged trades?

15             THE COURT:  Yes.

16             MR. NOVICK:  I think that -- my first comment

17   Your Honor, would be where it says, "I instruct you

18   disregard any arguments you heard," instead of

19   "government's rebuttal," "the lawyers'," with

20   s-apostrophe, "arguments concerning uncharged trades."

21             I think that rightly addresses itself to both

22   the government as well as to anything Mr. Klein may have

23   said.

24             THE COURT:  Okay.

25             MR. NOVICK:  I would also like an instruction,

1    Your Honor, or a sentence in there -- and I'm trying to

2    formulate it as I speak -- to the effect of "you may

3    consider generalized testimony of witnesses about the --

4    about what happens on the desk, about what happened" as

5    opposed to specific trades.  Because I think that's fair

6    evidence, and this is unfairly pushing them away from that

7    when the reality is, I think, that is competent evidence

8    to use at trial.

9            So I am going to try to work on that here, Your

10   Honor, but I think something that would get at that point

11   where it does not prejudice the government.

12           THE COURT:  And in regard to the charities?

13           MR. NOVICK:  In regard to the charities, Your

14   Honor, if -- again, I don't think, as I understand it, the

15   issue is -- let me back up.

16           Mr. Mukasey's argument appears to be that we

17   didn't present evidence of charities.  I think that's

18   untrue.

19           But at any rate I think it's a question of --

20   the Court raises a different question, which I understand,

21   but it's not the one Mr. Mukasey has raised here.  And

22   ultimately in response to the one Mr. Mukasey raised here,

23   the last part of the last sentence where it says "and I

24   further instruct you that there is no evidence," I think

25   that's just not correct.

1    And so if Your Honor just instructs them, "I

2    remind you again that what the lawyers say is not

3    evidence," period, I think does what Mr. Mukasey asked and

4    no more than that.

5    Again, I think given that it is a fair inference

6    from the evidence, there's really no need to give

7    Mr. Mukasey's instruction at all because it doesn't --

8    again Mr. Mukasey's objection does not get at -- is

9    incorrect in the sense that there was evidence three of

10   the four victim representatives that they did manage

11   endowment money.

12   But at any rate --

13   MR. MUKASEY:  Can I be heard just for a moment?

14   I know he has a lot to say and you're waiting to let the

15   jury in.

16   But just with regard to the first instruction on

17   the uncharged trades, the first -- the introduction

18   "during the government's summation," first of all, I think

19   it should be "during the government's rebuttal summation,"

20   as opposed to "summation."  And I don't think as

21   Mr. Novick suggests, it should be "during the lawyers'

22   arguments."  We are not trying to add a new instruction

23   here.  What we're trying to do is take a playing field

24   that is now tilted by Mr. Brennan's comments and even it

25   out.

1          And so we're not talking about the lawyers'

2      arguments, we're talking about the government's rebuttal

3      summation.

4          With respect to the charity -- and so I think

5      it's sort of fraudulent in a sense to suggest that this

6      instruction is being delivered because of both sides'

7      arguments.  It's just not.

8          With respect to the charity language, again, I

9      don't mean to use the word "fraud," but I think it's sort

10      of dishonest to say that there was evidence in this case

11      that charities were invested in the investment funds.

12          So it's not a fair comment on the evidence

13      because it wasn't in the evidence, and I think the

14      instruction as we set it out or as Your Honor could

15      improve it is the way it should go.

16          THE COURT:  Okay.

17          MR. NOVICK:  Your Honor, just, I'm sorry -- the

18      instruction regarding uncharged trades, Mr. Mukasey

19      pointed out something that I had forgot to say.

20          I would also get rid of the first four words

21      which says "during the government's summation," and just

22      begin "you may have heard."

23          MR. MUKASEY:  That suggests that both sides

24      would have done it.  That's not what happened.

25          I understand he wants to gloss over it and kick

```
 1      it under the rug, but it was not happening during both

 2      sides.

 3              You only heard that reference during one side's

 4      arguments.  That's why we're issuing the instruction.

 5              MR. NOVICK:  Your Honor, whatever Mr. Mukasey

 6      wants to say, the thing that was glossed over again this

 7      morning was the comment -- and I understand the Court's

 8      point that the Court wished we had proceeded differently,

 9      and I understand that -- but the fact remains that this

10      issue or this problem, or whatever it is, that's created

11      from the defense summation.

12              And I think it's unfair, again talking about

13      unfair to slant an instruction one way or the other, to

14      simply give the instruction -- instruct the jury on the

15      law I think ought to be the guidepost here.

16              THE COURT:  Okay, all right, thank you.

17              MR. NOVICK:  Thank you.

18              THE COURT:  Please bring in the jury.

19                  (Whereupon, the jury entered the

20                   courtroom.)

21              THE COURT:  Good morning members of the jury.

22      Thank you for your patience this morning.  I've been

23      speaking with counsel about a number of things that I need

24      to address in my final instructions to you this morning.

25              As you know, once these instructions have been
```

1    given, we will ask you to retire to deliberate.

2            I told you before that you will have a written

3    copy of my instructions with you in the jury room while

4    you deliberate.  Even so, I'm obliged to instruct you on

5    the law here in open court, and I'm going to be

6    instructing you first with regard to some matters that

7    have cropped up as a result of the closing arguments, and

8    then I'm going to give you what might be thought of as

9    more standard instructions concerning your deliberations.

10           Please remember that you should not single out

11   any one part of the instructions, instead you should

12   consider all the various instructions as a whole and

13   consider each one in light of all the others.

14           I have tried to be accurate and concise, which

15   means I have tried to avoid needless statements.  I've

16   tried to avoid repetition.  I've tried to confine myself

17   to statements that are accurate and concise.

18           In light of that, I would ask you to pay

19   attention to everything that I have said.  Again, don't

20   single out one instruction and ignore the rest, you have

21   to view them as a whole, but please bear in mind that I

22   have done my best to be accurate and concise.

23           Let me also tell you that you should not read

24   into my instructions or into anything I have said or done

25   at any point in this case any suggestion from me as to

1       what your verdict should be.  If you go all the way back

2       to the first day of jury selection and come all the way to

3       now, you are not to draw any inferences from anything that

4       I have said or done, from a tone of voice, from a facial

5       expression, from my not speaking, that I hold a view one

6       way or the other on any of the issues that are entrusted

7       to you in this case.

8               I'm not here to be supportive of either side, to

9       help either side.  That's not my role.  My role is to

10      preside impartially, and I have tried to do that.

11              So please don't misconstrue any question that I

12      might have asked of a witness, any comment I might have

13      made in speaking with a lawyer in the courtroom in your

14      presence or otherwise any suggestion from me as to what I

15      think you ought to do, okay?

16              One of the issues that I need to speak with you

17      about as a result of comments made during closing

18      arguments concerns the requirement that the government

19      prove beyond a reasonable doubt that a defendant acted

20      willfully.  The lawyers in their closing arguments talked

21      about this, and the instructions that I have prepared,

22      which you have already heard, include instructions on this

23      requirement.

24              What I'm about to tell you does not detract from

25      what I have already said to you on this subject and it

1    does not replace what I have said to you on this subject;

2    instead, my intention is to provide you with further

3    guidance on this particular requirement in light of the

4    arguments that you have heard.

5         You have been instructed that in order to

6    sustain its burden of proof, the government must prove

7    that the defendant acted willfully.  When a criminal

8    statute requires the government to prove that a defendant

9    acted willfully, the term "willfully" generally requires

10   the government to prove that the defendant knew his

11   conduct was unlawful.

12        This requirement helps protect individuals

13   against undeserved conviction of a felony offense by

14   ensuring that a person will not be convicted of a serious

15   crime unless he consciously made a wrong choice to act in

16   a way he knew was prohibited by law.

17        At a fundamental level, due process requires

18   that a person be given fair notice that an act is criminal

19   before the person can be convicted of a serious crime

20   based on that act.  Punishing the act itself without

21   regard to whether a choice was made to break the law

22   ignores the principle inherent in due process that a

23   deliberate choice to do wrong must precede punishment.

24        In the context of securities law, willfulness

25   has been defined as "a realization on the defendant's part

1    that he was doing a wrongful act under the securities laws

2    in a situation where the knowingly wrongful act involved a

3    significant risk of effecting the violation that has

4    occurred."

5            Thus to prove that a defendant had the intent

6    required to commit securities fraud, to prove the

7    defendant committed a willful violation of the securities

8    laws, the government must prove beyond a reasonable doubt

9    that the defendant knew his conduct was wrongful and

10   involved a significant risk of violating the law.

11           The defendants' conduct was not willful if it

12   was due to negligence, inadvertence, mistake or a good

13   faith misunderstanding of the requirements of the law.

14           If the defendant believed in good faith that he

15   was acting properly, even if he was mistaken in that

16   belief, and even if others were injured by his conduct,

17   there would be no crime.

18           Again, that instruction supplements the

19   instruction I gave you before, and I'm going to insert it

20   into the written instruction that I read to you earlier.

21           What else do I need to speak with you about?

22           I want to remind you that under your oath as

23   jurors you must decide the issues entrusted to you based

24   on fair and impartial consideration of the evidence and

25   without bias or prejudice of any kind.  If you let bias,

1    prejudice, sympathy or other emotions interfere with your

2    clear thinking about the evidence, there is a risk you

3    will not arrive at a just verdict.

4            In reaching your decision, it would be improper

5    for you to consider any personal feelings you might have

6    about the race, sex, age, lifestyle or other features of

7    the parties, the witnesses, the lawyers or anybody else

8    involved in the case.  It would also be improper for you

9    to be influenced by any feelings you might have about the

10   nature of the charges in the case or the wisdom of the

11   laws the defendants are charged with violating.  Your

12   responsibility is to determine whether the government has

13   proven guilt beyond a reasonable doubt.

14           Your verdict must be based solely on the

15   evidence or any lack of evidence regarding a given charge

16   and must reflect dispassionate analysis of the evidence --

17   dispassionate analysis of the evidence.

18           Again, the key question you must answer as to

19   each charge and as to each defendant is whether the

20   government has met its burden of proving each element of

21   the offense beyond a reasonable doubt.

22           There are a couple of other things I need to

23   speak with you about as a result of matters that cropped

24   up during the parties' closing arguments.

25           You may have heard counsel refer to trades that

1    are not the subject of any evidence presented to you here

2    during this trial.  I instruct you that you are to

3    consider the trades that were charged in the indictment

4    that have been the subject of the evidence presented

5    during the trial.  That's what you are here to do.  You

6    are not to speculate about what might or might not have

7    happened with regard to other trades, trades that have not

8    been the subject of the evidence here.  Again, your

9    responsibility is to analyze the evidence that has been

10   presented to you.  It's not your job to speculate about

11   what else might have happened; okay?

12            Again, I remind you that arguments made by

13   lawyers are not evidence.

14            There's one other matter I need to address as a

15   result of comments made during closing argument.

16            Reference was made to "charities" or "charitable

17   institutions."  I myself don't remember evidence about

18   charities or charitable institutions.  Perhaps I'm

19   mistaken.  As I have told you, it's your recollection of

20   the evidence that controls; and I remind you that, as I

21   have just emphasized, your verdict is to reflect

22   dispassionate analysis of the evidence, it is not to be

23   based on sympathy, prejudice, bias, emotion or any other

24   feeling you might have.

25            There's no instruction here that calls on you to

1     consider whether this case involves charities.  That's not

2     something that I'm asking you to consider.  I'm asking you

3     to analyze the evidence that has been presented and

4     determine whether or not the government has met its burden

5     of proving reasonable doubt as to each element of the

6     crimes charged here under the instructions that I have

7     given with regard to the elements of those crimes; okay?

8              I'm going to turn now to the instructions for

9     your deliberations.

10             Members of the jury, each of you has received

11    copies of the verdict form where you will record your

12    decisions in this case.  If you briefly review the verdict

13    form, you will see that you are asked to make a

14    determination with regard to each charge in the indictment

15    and as to each defendant.

16             You will have a copy of the indictment with you

17    when you deliberate along with a copy of these

18    instructions.

19             With regard to deliberations, let me remind you

20    that the evidence from which you are to decide what the

21    facts are comes in one of three forms:  The sworn

22    testimony of the witnesses, the exhibits that have been

23    admitted into the record of the case and any facts to

24    which the parties have agreed or stipulated.  Nothing else

25    is evidence.  What the lawyers have said in their closing

1    arguments is not evidence.

2           Moreover, if a lawyer has described the evidence

3    in a way that is contrary to your recollection of the

4    evidence, your recollection controls, and that goes as

5    well for any statement I have made concerning the

6    evidence.  It's your recollection that controls.

7           Any testimony that has been excluded, stricken

8    or that you have been instructed to disregard is not

9    evidence, it must be disregarded, and anything you might

10   have seen or heard outside the courtroom is not evidence.

11   Again you must completely disregard any media reports

12   regarding the case.

13          I've just discussed the three forms in which

14   evidence comes:  Testimony, exhibits, stipulations.

15          Within those three forms of evidence, there are

16   two kinds of evidence:  Direct evidence and circumstantial

17   evidence.

18          Direct evidence is direct proof of a fact, such

19   as testimony of an eye witness as to what he or she saw.

20          Circumstantial evidence, in contrast, is proof

21   of a chain of circumstances from which you can infer or

22   conclude that a fact exists even though it hasn't been

23   proven directly.

24          You are entitled to consider both types of

25   evidence.

1            The word "infer" or the expression "to draw an

2    inference" means to find that a fact exists based on proof

3    of another fact.  For example, if you see water on the

4    street outside your window, you can infer that it has

5    rained.  The fact of rain is an inference that could be

6    drawn from circumstantial evidence, the presence of water

7    on the street.  Direct evidence of rain, on the other

8    hand, would of course be an actual observation by an eye

9    witness of rain falling from the sky.

10            An inference may be drawn only if it is

11   reasonable and logical, not if it is speculative.  The

12   presence of water on the street outside your window could

13   be due to rain or the water might have come from some

14   other source.  Maybe you live on a narrow street in the

15   city where a water truck comes by periodically to clean

16   the street and gutters.

17            Therefore, in deciding whether to draw an

18   inference, you must look at and consider all the facts in

19   light of reason, common sense and experience.  After you

20   have done that, the question whether to draw a particular

21   inference is for you to decide.

22            An inference is not a suspicion or a guess, it

23   is a reasoned, logical conclusion that a fact exists based

24   on the existence of another fact.  There are times when

25   different inferences can be drawn from facts whether

1      proven by direct or circumstantial evidence.  The

2      government asks you to draw one inference while a

3      defendant asks you to draw another.  It is for to you

4      decide what inference you will draw.

5            The process of drawing inferences from facts on

6      evidence is not a matter of guesswork or speculation, an

7      inference is a reasonable deduction or conclusion that

8      you, the jury, are permitted to draw, but not required to

9      drew, from facts that have been established by either

10     direct or circumstantial evidence.

11           In drawing inferences, you should use your

12     common sense.

13           The law makes no distinction between the weight

14     to be given direct evidence and the weight to be given

15     circumstantial evidence but requires that in order to

16     convict a defendant you must be convinced of his guilt

17     beyond a reasonable doubt.

18           In deciding what the facts are, you must

19     consider all the evidence that has been presented.  In

20     doing this, you must decide which testimony to believe and

21     which testimony not to believe.  You as jurors are the

22     sole judges of the credibility of the witnesses and of the

23     weight their testimony should receive.  You should

24     carefully scrutinize all the testimony, the circumstances

25     under which each witness testified and every matter in

1    evidence that tends to show whether a witness is or is not

2    worthy of belief.

3           In assessing the credibility of the testimony of

4    a witness, there are a number of factors you may take into

5    account.  These include:  The witnesses' appearance,

6    conduct and demeanor while testifying; the witness's

7    apparent candor or lack of candor while testifying; the

8    witness's opportunity or lack of opportunity to observe

9    the events described; the witness's intelligence, memory

10   and ability to recount accurately what the witness

11   observed; whether the witness has any interest in the

12   outcome of the case or any bias or prejudice concerning

13   any party or any matter in the case; the reasonableness or

14   unreasonableness of the witness's testimony considered in

15   light of all the evidence in the case; the accuracy of the

16   witness's recollection; whether the witness made

17   statements before the trial that are consistent or

18   inconsistent with the witness's trial testimony.

19          You are not required to believe the testimony of

20   any witness simply because it was given under oath.  It is

21   within your province to determine what testimony is worthy

22   of belief and what testimony is not worthy of belief.  You

23   may believe or disbelieve all or any part of the testimony

24   of any witness.

25          If you find that a witness's testimony is

1    contradicted by what that witness has said or done at

2    another time or by the testimony of other witnesses, you

3    may believe or disbelieve all or any part of the witness's

4    testimony.

5              But in deciding whether or not to believe such a

6    witness, keep these things, among others, in mind:

7              People sometimes forget things.  A contradiction

8    may be an innocent lapse of memory or it may be an

9    intentional falsehood.  Consider therefore whether it has

10   to do with an important fact or only a small detail.

11             Also different people observing an event may

12   remember it differently and therefore testify about it

13   differently.

14             You are not required to accept testimony even

15   though the testimony is uncontradicted.  You my decide

16   because of the witness's bearing and demeanor or because

17   of the inherent improbability of the testimony, or for

18   other reasons sufficient to you, that the testimony is not

19   worthy of belief.

20             On the other hand, the testimony of a single

21   witness may be sufficient to convince you of a fact in

22   dispute if you believe, based on the witness's bearing and

23   demeanor or the inherent probability of the testimony or

24   for other reasons, that the witness has truthfully and

25   accurately described what occurred.

1          In connection with your evaluation of the

2     credibility of the witnesses, you should consider whether

3     a witness has shown bias or prejudice or hostility toward

4     the government or one or more of the defendants.  Evidence

5     that a witness is biased, prejudiced or hostile toward a

6     party requires you to view that witness's testimony with

7     caution, weigh it with care and subject it to close and

8     searching scrutiny.

9          You have heard testimony that Mr. Dinucci has

10    pleaded guilty to charges arising out of the same type of

11    conduct alleged in the indictment.  You are instructed

12    that you are to draw no adverse inferences about the guilt

13    of the defendants from the fact that Mr. Dinucci has

14    pleaded guilty to similar charges.  Mr. Dinucci's decision

15    to plead guilty may not be used as evidence against any of

16    the defendants.

17          In this case, none of the defendants testified.

18    You may not attach any significance to the fact that the

19    defendants did not testify.  Under the Constitution, a

20    defendant has no obligation to testify because he has no

21    burden of proof.  Indeed, the Constitution guarantees to

22    an accused the right not to testify.  It would be a

23    violation of your duty as jurors if you were to draw an

24    inference against a defendant or penalize him in any way

25    because he exercised his Constitutional right not to

1    testify.  Accordingly, you are not to discuss the fact

2    that a defendant chose not to testify or allow it to enter

3    into or influence your deliberations in any way.

4            Under the Constitution, a person accused of a

5    crime is protected by the presumption of innocence and has

6    no obligation to present evidence of any kind.  That the

7    defendants have presented evidence in this case does not

8    mean that they can no longer rely on the presumption of

9    innocence; rather, each defendant continues to be

10   protected by the presumption of innocence notwithstanding

11   his decision to present evidence.

12           In addition, that the defendants have elected to

13   present evidence does not mean that the burden of proof

14   has shifted to them.  A defendant is never required to

15   prove that he is not guilty.  The burden is always on the

16   government to prove a defendant's guilt beyond a

17   reasonable doubt.

18           You may not draw any inference, favorable or

19   unfavorable, toward the government or the defendants from

20   the fact that certain persons were not named as defendants

21   in the indictment or that certain persons were named as

22   co-conspirators but not indicted.  The circumstances that

23   these persons were not indicted must play no part in your

24   deliberations.

25           There is no requirement that the government use

1    any specific investigative techniques to prove its case

2    nor does the law require that all persons who might have

3    been present at any time or place mentioned in the case or

4    who might appear to have some knowledge of the issues in

5    the case be called as witnesses, nor does the law require

6    that all things mentioned during the course of the trial

7    be produced as exhibits.

8           You may, however, consider the fact that the

9    government did not use certain investigative techniques or

10   exhaustively pursue every piece of information in

11   determining whether the government has met its burden of

12   proof.

13          There are some persons whose names you heard

14   during the course of the trial who did not appear here to

15   testify.  I instruct you that each party had an equal

16   opportunity or lack of opportunity to call any of these

17   witnesses, therefore you should not draw any inferences or

18   reach any conclusions as to what they would have testified

19   to had they been called.  Their absence should not affect

20   your judgment in any way.  You should, however, remember

21   my instruction that the law does not impose on a defendant

22   in a criminal case the burden or duty of calling any

23   witnesses or producing any evidence.

24          I remind you that with regard to each of the

25   offenses charged in the indictment, the government must

1   prove all the essential elements of the offense beyond a

2   reasonable doubt.  If the government has failed to meet

3   this burden as to a given charge, your verdict should be

4   not guilty.  However, if it has sustained its burden as to

5   that charge, your verdict should be guilty.

6          Remember also that your verdict must be based

7   solely on the evidence in the case or any lack of evidence

8   and the law as I have given it to you, not on anything

9   else.  If anyone has stated a principle of law different

10  from the instructions I have given you on the law, my

11  instructions control.

12         Closing arguments or other statements or

13  arguments of counsel are not evidence.  Again, if your

14  recollection of the evidence differs from the way counsel

15  has stated the facts, your recollection controls.

16         I remind you that what I say is not evidence.

17  Again, you should not infer from anything I have said or

18  done during the trial that I hold any view one way or the

19  other on any of the questions on the verdict form.  My

20  view would be irrelevant in any event because you and you

21  alone are the judges of the facts of the case.

22         To return a verdict, it is necessary that your

23  verdict be unanimous; in other words, agreed to by each of

24  you.  Each of you must make your own decision but do so

25  only after impartial consideration of the evidence with

1      your fellow jurors.  It is your duty to consult with one

2      another and to deliberate with a view toward reaching an

3      agreement if you can do so consistently with the

4      individual judgment of each juror.

5            In the course of your deliberations, do not

6      hesitate to reexamine your own individual views and to

7      change your opinions if your analysis of the evidence and

8      the views of your fellow jurors convince you to do so;

9      however, you should not surrender an honest conviction

10     about the facts or about the weight or effect of the

11     evidence merely to bring an end to deliberations.

12           With regard to any notes you might have taken

13     during the trial, please remember that the notes are for

14     your own use only and are not to be shown to other members

15     of the jury.

16           The question of the potential punishment that

17     could be imposed on a defendant if he were to be found

18     guilty should not enter into your deliberations.  The duty

19     of imposing sentence rests exclusively with the sentencing

20     judge.

21           As to each charge in the indictment against each

22     defendant, your duty as jurors is to weigh the evidence in

23     the case and determine whether or not the government has

24     proven guilt beyond a reasonable doubt.  Under your oath

25     as jurors, you my not allow concern about possible

1   punishment to enter into your deliberations or influence

2   your verdict.

3          When you return to the jury room, the first

4   thing you must do is elect one member of the jury to act

5   as your foreperson.  The foreperson will preside over the

6   deliberations of the jury and speak on behalf of the jury

7   in communications with me.  Please do not begin your

8   deliberations until you have received the exhibits from

9   Terri.

10         Once you do begin your deliberations, all cell

11  phones and other electronic devices must be turned off.

12  No deliberations are permitted to take place unless all

13  jurors are present.  If at any time a member of the jury

14  needs to take a break, the other jurors must stop

15  deliberations until that juror returns and then recommence

16  with everybody as a group.  The jury deliberates together

17  as a group with everyone present.

18         You have a duty to safeguard the secrecy and

19  integrity of your deliberations.  Accordingly, do not

20  communicate with anyone about the case except your fellow

21  jurors.  You are not permitted to communicate about the

22  case with anyone except your fellow deliberating jurors.

23  This rule applies to family members and friends, it

24  applies to Terri, it even applies to me.  This includes

25  discussing the case in person, in writing, by phone or by

1      any electronic means, including text messaging, email,

2      facebook, blogging, internet chat room or website.  In

3      other words, do not communicate with anyone by any means

4      except your fellow jurors, and then only while you're in

5      the jury room with everyone present.

6           If you are asked or approached in any way about

7      your jury service or anything about the case, you should

8      respond you have been ordered by the Judge not to discuss

9      the matter and you should report the contact to me as soon

10     as possible.

11          Along the same lines, you must scrupulously

12     refrain from trying to access information about the case

13     from any outside source, including:  Dictionaries,

14     reference books or anything on the internet.  Information

15     that you may find from an outside source, including on the

16     internet or otherwise in a printed reference, might be

17     incorrect or incomplete.

18          Moreover, as I've instructed you before, you

19     must scrupulously avoid any media reports about the case

20     or any other outside influences.  In our system of

21     justice, it is important that you not be influenced by

22     anyone or anything outside this courtroom.  Your sworn

23     duty is to decide the case solely on the legally

24     admissible evidence that was presented to you here in the

25     courtroom in the presence of your fellow jurors, the

1    parties and me.

2              If you need to communicate with me regarding the

3    case, you should send a note to me signed by your

4    foreperson or another member of the jury.  I will respond

5    as promptly as possible, either in writing or by asking

6    you to return to the courtroom, at which time I will

7    address you in response to your note in the presence of

8    the parties.  If you do send a note to me, please do not

9    indicate in the note how the jury stands numerically or

10   otherwise with regard to the issue of guilt.

11             Once you have reached a unanimous verdict, your

12   foreperson should send a note to me informing me of that

13   fact, and I will then ask the jury to return to the

14   courtroom.

15             The foreperson should not use the verdict form

16   for this purpose.  Instead, the foreperson should send me

17   a separate note informing me that a unanimous verdict has

18   been reached.  The foreperson will be asked to deliver the

19   verdict form here in open court after the jury has

20   returned to the courtroom.

21             At this time it is my unhappy responsibility to

22   address our alternate jurors.  The law provides that a

23   deliberating jury must be comprised of not more than 12

24   jurors.  Under the law, a deliberating jury of more than

25   12 is not permitted.  Accordingly, I must separate the

1    alternate jurors from the rest of the jurors at this time.

2            When the other jurors retire to the jury

3    assembly room to deliberate, alternates will be asked to

4    retire to a different room and stand by in case you are

5    needed to join the deliberating jury.  If a member of the

6    deliberating jury must be excused for any reason, you will

7    be called on to replace that person and the deliberations

8    of the jury will begin again.

9            Although the deliberating jurors will be

10   discussing the case at this point, the alternate jurors

11   must refrain from talking about the case with anybody,

12   even each other.

13           I realize that this is an awful lot to ask, but

14   it is what the law requires.  Please understand that it is

15   possible that an member of the deliberating jury will have

16   to be replaced and it is important that the alternate not

17   have engaged in discussions about the case with anybody

18   before participating in deliberations.

19           The 12 regular jurors will retire to the jury

20   room.  I will speak with the alternates after the other

21   jurors have retired to the jury room.

22           Our alternate jurors are Jurors 13 and 14.  The

23   regular jurors will retire to the jury room at this time.

24           Please do not begin your deliberations until

25   Terri tells you to begin.

```
1              Thank you.
2                   (Whereupon, the jury left the courtroom.)
3              THE COURT:  Please be seated.
4              I want to tell you that I feel aggrieved, as I
5    imagine you might as well, having to separate you from the
6    other jurors.  I hate to do it.  I have paid close
7    attention to you throughout the trial and you've been
8    great, and I would love to have you in the jury room
9    deliberating with everybody else.  Nothing would please me
10   more.  Unfortunately the law doesn't let me do that, and
11   that doesn't make it any easier, but that's just the way
12   it is.
13             I know you have belongings in the jury room and
14   I'm going to ask you to go back and retrieve them, and
15   then I'll speak with you more after you've done that.
16             We're going to try to find a place where you can
17   be comfortable.  I am sorry, but this is what the law
18   requires of me, and all I can do is ask for your
19   understanding; okay?
20             Terri, would you please help our alternates?
21                  (Alternates leave courtroom).
22             THE COURT:  Please be seated.
23             I'm not sure where the alternates are going to
24   be, but I'll ask Terri to let you know, because it will be
25   very important of course that you avoid any contact with
```

1    them, just as it's very important you avoid contact with

2    the regular jurors.

3              I will now undertake to create a final copy of

4    the written instructions that incorporates what I have

5    said, and we'll provide you with a copy as we provide the

6    jury with a copy.

7              Is there anything further?

8              MR. NOVICK:  No, Your Honor.

9              MR. PETRILLO:  No, Your Honor.

10             MR. BROWN:  No, thank you.

11                 (Whereupon, a recess followed)

12             THE COURT:  Good afternoon.  We've received a

13    note from the jury marked Court Exhibit 6.  It states,

14    "Where are the four trades in the government evidence?"

15             The note also asks:  "Can we please have some

16    sticky notes?"

17             And it's signed by Juror Number 5.

18             Any comments?

19             MR. NOVICK:  Your Honor, obviously there's some

20    lack of clarity in the question.  The government's opinion

21    is, at least based on circumstantial evidence here, is

22    that there are four trades -- or let's put this way, four

23    exhibit series that did not go back or did not come in.

24    Those are Government's Exhibit Series 20, 23, 24 and 28;

25    and so our best guess here is that it is referring to

1    that.

2              So I don't have an objection either, depending

3    what the defense wants, to ask for more clarity and maybe

4    together with some instruction saying that you have all

5    the evidence and sometimes it happens in criminal trials

6    that all numbers are not used and you should draw no

7    inference one way or the other from that fact.

8              Because I don't think it's fair to either side

9    to suggest that there's something else that should have

10   been there that wasn't.  That we just have some generic

11   instruction that says you shouldn't infer from there not

12   being a number or no evidence at 20, that they shouldn't

13   weigh it one way or the other.

14             THE COURT:  Do you think we should ask for

15   clarification?

16             MR. NOVICK:  It's fine if that's what the

17   defense wants, Judge.

18             I think that it's reasonably clear and I don't

19   think there's any harm to saying to them that they have

20   all of the evidence and that they shouldn't read anything

21   into when sequential numbers are skipped; but I defer to

22   the Court's judgment in terms of what would be most useful

23   to the jury.

24             THE COURT:  Okay, thank you.

25             MR. PETRILLO:  I think we're okay with that

1    approach, which is as stated, to advise the jury that they

2    have all the evidence and may very well be that the

3    numbers are not consecutive.

4              THE COURT:  Do you want me to bring the jury in

5    and tell them this?

6              MR. PETRILLO:  I don't think it's necessary from

7    our point of view.

8              MR. MUKASEY:  I think if you draft a short note,

9    we could hear it, and it's probably quicker to do it that

10   way.

11             MR. NOVICK:  That's fine with us, Your Honor.

12             Although, Your Honor, I wanted to raise one

13   other issue that at least in part was triggered by reading

14   this.

15             When the Court was giving its final

16   instructions, in the curative instruction part -- and

17   maybe it's helpful to go back and look -- my concern was

18   the Court said the only trades the jury should consider

19   are the ones that are in the indictment or that are

20   charged.

21             Not all of the trades that are in evidence, that

22   came in, that everybody was on notice of, are listed as

23   substantive counts or overt acts.  They were part of the

24   conspiracy, that's why they were relevant.

25             So I had some concern that the jury -- to make

1    sure that the jury understand that they're entitled to

2    consider all the evidence, whether or not specifically

3    articulated in the indictment.

4              THE COURT:  Okay.  Any comment on that?

5              MR. BROWN:  Judge, we object to that.  They've

6    got it.  They've begun deliberating.  We don't think the

7    Judge should now tell them what they can and cannot

8    consider.

9              THE COURT:  Okay.  Just so I understand, with

10   regard to the sequential numbering, the inference that you

11   draw, Mr. Novick, is that the jury has the exhibit series

12   for the other trades and not these four, and it's the

13   absence of those four from the sequential series that

14   makes you think that's what they're looking for?

15             MR. NOVICK:  That's the way I draw that

16   inference, Your Honor.

17             THE COURT:  I think I'm going to bring the jury

18   in and not send them a note.

19             Would you please arrange for the alternates to

20   join us?

21             MR. BROWN:  Judge, you're not going to go

22   further than what Mr. Novick asked for, are you?

23             THE COURT:  No.

24             MR. BROWN:  Thank you, Judge.

25             THE COURT:  It may take a few minutes to get the

1    alternates here.  We'll remain in session.

2                    (Pause)

3                    (Whereupon, the jury entered the

4                    courtroom.)

5              THE COURT:  Good afternoon everyone.  I've

6    received your note and I have discussed it with the

7    parties and I'm going to respond as best I can.

8              In this note you ask, "Where are the four trades

9    in the government evidence?"

10             And you go on to ask, "Can we please have some

11   sticky notes?"

12             The second question is easily answered.  Yes, of

13   course, you can have sticky notes, and we'll be sure to

14   get them to you right away.

15             With regard to the four trades that you refer

16   to, I'm not exactly sure what you have in mind.  It's

17   possible that you're referring to the absence of evidence

18   with regard to four trades that do not appear in the

19   sequential order of the trades; specifically 20, 23, 24

20   and 28.

21             If that is what you have in mind, I can tell you

22   that you have all the evidence that you are being asked to

23   consider and you should draw no inferences nor reach any

24   conclusions about any issue before you because you don't

25   have any evidence of trades with those numbers.  Instead,

1    you should simply consider the evidence with regard to the

2    trades that you do have.  Okay?

3              Now, if I'm not responding to your question,

4    then I need to ask you for clarification.  I don't mean to

5    impose, but I want to be sure to help you, and so it would

6    be necessary for you to give me another note letting me

7    know what you are looking for from me.

8              You ask "Where are the four trades in the

9    government evidence?"  Again, I don't know what four

10   trades you have in mind and I don't understand what you're

11   looking for.  So please bear with me, and if you could

12   give me clarification, I'll be happy to provide you with

13   additional information in response to your question; okay?

14             All right, thank you all.

15             (Whereupon, the jury left the courtroom.)

16             MR. NOVICK:  That may not have been what they

17   wanted, Your Honor.

18             THE COURT:  Right.  I got the sense that we

19   didn't zero in on whatever it is that concerns the jury.

20   Judging from their facial expressions, they didn't know

21   what I was talking about.  We'll wait to get an another

22   note.  Please stand by.

23             (Pause)

24             THE COURT:  We've received a note from the jury

25   marked Court Exhibit 7, and it asks:  "Which tabs in the

1    government and defense binders are associated with the

2    following trades" –– and it lists four trades –– "number

3    one, the JPALT trade, which is referenced in Counts Two,

4    Five and Six; two, the PPSI trade referenced in Counts

5    Three, Eight and Nine; three, the AAA trade referenced in

6    Count Seven; and four, the WAMU trade referenced in Count

7    Four.

8            The binders that the jury refers to are, I

9    believe, seven in number, each containing a large volume

10   of documents.  I think it's incumbent on us to be

11   responsive to the jury of course.

12           My understanding is that counsel have looked at

13   this note, conferred and considered various options; and

14   the upshot of it is, I'm told, that the parties would have

15   me tell the jury there's really nothing we can do.

16           I'm loathed to respond that way.  If I'm the

17   foreman of the jury and we're seeking to review the

18   evidence as we are instructed to do with regard to each

19   trade, where do I go in the binders for the documents that

20   we are duty bound to review?

21           It's not sufficient, in my opinion, to tell the

22   jury they're in those binders somewhere.  Good luck.

23           MR. MUKASEY:  Judge, if I may speak, at least

24   first, for the defendants.

25           It's not our goal here to make the jury find

1    needles in a haystack.  From our point of view, however,

2    we did not approach putting together the binders by trade,

3    putting together the tabs or the documents by trade.

4          With each witness who testified about a

5    particular trade, we would cross-examine that witness on

6    that trade, other trades they had done, other trades other

7    people had done, other chats that might relate to that

8    person's credibility on that trade.

9          So we really came at this more from a thematic

10   point of view, as Your Honor well knows at this point,

11   than we did these four documents have the letters PPSI or

12   AAA on them.

13         And we think it would be more misleading to the

14   jury to say, you have documents that have the word or the

15   designation "JPALT" at tabs 6, 9 and 12 and thereby give

16   the jury the impression that our defense of those trades,

17   if you will, is limited to those documents.

18         Because our approach in defending the trades

19   went far wider than simply the documents that have the

20   letters J-P-A-L-T on them.

21         And while the government may have organized

22   their exhibits by bond or by trade, we also think it would

23   create a misimpression of some sort of equivalency or

24   weighing of the government's trade tabs or binder or

25   exhibits versus the two or three scatter shot pieces of

1    paper that we may have used or introduced during

2    discussion of the JPALT trade.  But that certainly is not

3    our defense to that trade or what's relevant to that

4    trade.

5             So I guess our view is the universe of

6    documents -- and it's only 153 exhibits -- it's a lot of

7    paper, but it's only 153 exhibits.  Our view is that you

8    really have to appreciate the evidence in its entirety in

9    order to examine each trade as opposed to the couple

10   random pieces of paper that might have that bond acronym

11   on it.

12            THE COURT:  Any other comments on the defense

13   side?

14            MR. PETRILLO:  No, Your Honor; we agree.

15            THE COURT:  All right.  How about on the

16   government's side?

17            MR. NOVICK:  Your Honor, we defer to the Court

18   here.

19            I've given to the clerk, and I think who was I

20   believe already aware of, which trade, government series

21   numbers goes with which trade.  Which for the record is 22

22   for the JPALT, 26 is PPSI, 25 is AAA and 12 is WAMU.

23            But again, I defer to the Court on what we can

24   do in this particular situation.

25            Obviously if the defense -- I'll leave it at

1    that, Your Honor.  I'll defer to the Court what to do

2    here.

3               THE COURT:  Let me put the question to you,

4    Mr. Novick:  If I'm a juror and I want to see the

5    documents that relate to the JPALT trade, what am I

6    supposed to do?

7               MR. NOVICK:  Go to tab 22 and all the documents

8    are there.  Should be a title page in front.

9               THE COURT:  So starting with 22A?

10              MR. NOVICK:  Yep.

11              THE COURT:  That may be self-evident to the

12   jury.

13              MR. NOVICK:  And that's why -- I think that's

14   fine, Your Honor.  The government appreciates the

15   arguments the defense is making, and again we defer to the

16   Court how to be helpful here.

17              I hope they didn't move past it since we got the

18   note an hour and a half ago.

19              THE COURT:  Did you want to say something,

20   Mr. Brown?

21              MR. BROWN:  No, Judge, I was just going to add

22   that when they go to the tab, then they have to find what

23   it relates to.  They have the dates in the indictment

24   which I think would help them.

25              But we're a little betwixt and between on this.

1    Because, for example, on the JPALT bond, we have exhibits

2    that we've identified that relate to that bond that are

3    other chats on the day of the bond transaction that

4    directly involve discussions about that bond.

5           So I understand the jury's concern, and I share

6    a little bit of concern that they might just find the

7    government's side and then not find our documents, which

8    we think are just as relevant.  There's a chat at the same

9    time of those chats that has to do with the JPALT bond.  I

10   tried to cover that in my closing.

11          But at the same time I share Mr. Mukasey's

12   concern that it's sort of shifting the burden a little bit

13   and it's requiring us to now marshal all of the exhibits

14   that we say are relevant; and that's a little hard to do.

15          I guess my point is that if they're going to be

16   pointing anything out, I'd like to be able to add my list

17   of five exhibits on the JPALT and I'd like to indicate

18   that it's the only one in which Mr. Peters is really

19   involved.

20          But I'm sure they will object to that.

21          THE COURT:  Okay.  Does the jury have this list

22   of trades?

23          They do not.

24          It seems likely that jurors who have been as

25   attentive as our jurors are likely to know the number of

1        the trade that corresponds to each of these four; and by

2        the same token, likely to go to that tab.

3                So realistically, the probability is that the

4        jurors are able to go to the tab and look at the

5        government's documents.

6                In light of that, what would you like me to do?

7                MR. PETRILLO:  I think our view, Judge, is,

8        although it's voluminous and we're not arguing that, but

9        we think they have the evidence and it's now time to get

10       to work as opposed to being guided by the Court and the

11       parties.

12               MR. NOVICK:  I guess that's fine, Your Honor.

13               I mean, an instruction or a response simply that

14       I'm not permitted to marshal the evidence for you.  You

15       all have the evidence and you have to go through and

16       review it.  Something I think perhaps as simple as that,

17       as unsatisfying as it is.

18               THE COURT:  Would it be a good idea for me to

19       say to them that we don't want to leave them without any

20       assistance but there's not much we can do?

21               We can point out that the government's binders

22       are organized on a trade series by trade series basis and

23       that the defendants' evidence is not organized in that

24       way, so it falls to them to find their way through the

25       evidence, and if they have a more specific request, we're

1    happy to consider it, but to try to identify everything

2    that's responsive to their request is simply not possible

3    for us to do?

4              MR. NOVICK:  That's fine, Your Honor.

5              MR. KLEIN:  Can we have a minute, Your Honor?

6              (Pause)

7              MR. MUKASEY:  Judge, I think from our

8    perspective, the best thing to do, though it's not an

9    ideal solution, the best thing to do is to say that they

10   have all the evidence organized the way it is and to

11   remind them of the burden of proof, because we certainly

12   don't want an appearance that the government organized all

13   their trades by number in clean little groups and we did

14   not do that because we're, you know, not as organized or

15   we're not trying to -- you know, we're trying to take

16   somebody's eye off the ball or something.

17             We think there's a burden of proof issue here

18   when you start comparing how the binders are put together,

19   one's organized, one's not.  They have the burden to prove

20   the case, we didn't have the burden to put together or do

21   anything.  I wouldn't want a comparison of how they're put

22   together.

23             THE COURT:  How are your binders organized?

24             MR. BROWN:  They're organized by exhibit number,

25   Judge.  As we found documents, we added it to the end of

1    the list.

2              So, for example, for the one JPALT bond that we

3    put in some exhibits, we have them -- they range from

4    Exhibit No. 6 down to Exhibit No. 1118, and there's five

5    of them.

6              So there's no method to that because we just

7    added them to the list because we were preparing and

8    making sure they got notice of them.

9              MR. MUKASEY:  We're not trying to sort of make

10   things more complicated, we approached this case by theme,

11   not here's the documents that are related to this

12   particular trade.

13             THE COURT:  Mr. Brown points out that there are

14   documents that he would like to bring to the jury's

15   attention.

16             Are there other documents that other counsel

17   would like to bring to the jury's attention?

18             MR. BROWN:  Can I mention one problem with that,

19   Judge?  I think this is what we all struggle with:  Is

20   that the JPALT trade is the trade in which Mr. Harrison

21   told Mr. Peters to make a misrepresentation as part of his

22   negotiating tactic.

23             So while I've pulled out five documents that

24   relate directly to that trade on that day, our position

25   would be other documents in which Mr. Harrison lied to

1    counterparties would also be relevant to that, because it

2    would back up what we argued and what you see in the chat

3    is that Mr. Harrison's telling Mr. Peters to say something

4    that's not true.

5         So I think that's sort of the problem that we

6    have, is that by emphasizing the specific six, you sort of

7    put the others at a back seat.

8              MR. MUKASEY:  That's exactly right.

9              MR. BROWN:  I don't know how else to do it but

10   if we're going to point anything out about the

11   organization, then I think I have to come out from being

12   betwixt and between by saying I would like these other

13   five exhibits identified as specifically related to the

14   JPALT trade.  But then I think we would like some other

15   more broad instruction that says that all of the documents

16   should be considered because some of them might involve

17   the circumstances or the practices that are at issue in

18   that trade; and I think in that instance, we'd also like

19   to have some cursory or simple instruction about the

20   burden of proof.

21             I'm not suggesting you give the whole thing

22   again, but something that just reminds them that the

23   burden is on the government.

24             That's the only way I can think to do it is to

25   say the government's are arranged by trade, and maybe you

1    can look at the dates and you'll see that.  But in

2    addition, here are the five others that the defense put in

3    relating to the specific JPALT trade.  I don't know if

4    there's any other or specific trades.

5         But the defense position is that other

6    documents, all of their other exhibits go to -- are

7    relevant to that trade in analyzing why people did what

8    they did and what negotiation tactics were being used, or

9    something like that.  That's the only way I can think of

10   that you could sort of give them the guidance without

11   making it look like some subset of evidence, maybe even if

12   it's evidence that they've asked for, is more focused on

13   than the rest of the evidence.

14        That's the only way I can think to do it.

15        THE COURT:  Let me put a slightly different

16   question to you.  It's now after 4:00 and the jury may be

17   ready to go home for all I know.  But if you had the time

18   to think about this and identify documents that you would

19   like the jury to bear in mind as they review the

20   government's documents which are readily available to them

21   on a trade-by-trade basis, could you do that?

22        MR. BROWN:  I think so.

23        MR. MUKASEY:  Let me just say one thing for a

24   second.

25        I'm pretty sure the Second Circuit law is that

1       the evidence has to be stated as a whole, and I'm sorry

2       for stating something that's pretty obvious, and when we

3       start to pick out documents that relate to this issue,

4       relate to that element, relate to that trade, that's what

5       summation is for.

6               I think -- and I share the Court's concern about

7       wanting to give the jury as much useful information as we

8       can, but the evidence has to be considered as a whole, and

9       that means all of the evidence:  The testimony, the

10      stipulations; and I'm extremely concerned about focusing

11      on either side on particular documents that relate to

12      particular trades.

13              THE COURT:  Okay.  I can very easily underscore

14      the juror's obligation to consider all the evidence.  But

15      as a practical matter, it seems that the jury has decided

16      to approach deliberations by looking at these four trades,

17      the four that are the subject of the counts of the

18      indictment.

19              They have the government's binders which provide

20      them with the government's position on a trade-by-trade

21      basis.  They're free to look at those documents if that's

22      consistent with their approach to deliberations.  Maybe

23      they're doing that right now.

24              My question is:  Given the jurors' note, is

25      there anything that you would like to do in response by

1    way of identifying particular documents?  Assuming that

2    you have overnight to do that?

3           MR. MUKASEY:  Judge, I think that it can be done

4    in some way, shape or form.  It would be helpful, I think,

5    if we could take collectively the night to talk amongst

6    ourselves, maybe put our fingers on some documents and

7    give them to the Court together with some sort of

8    instruction that suggests that we do not intend to limit

9    our defense to these documents and obviously we don't have

10   any burden to produce any kind of evidence.

11          We may be able to come up with something where

12   we have some paper for them to look at together with an

13   instruction about how they should consider the paper in

14   light of all the evidence.

15          THE COURT:  Okay.

16          MR. NOVICK:  Your Honor, obviously we'd like

17   ample time to look at the exhibits that counsel

18   identifies.

19          From the government's perspective, I mean, they

20   really -- they just asked for the evidence related to

21   these trades.  I'm reticent to, at least from the

22   government's perspective, to agree to start instructing

23   them on the law in any deeper way than what we've already

24   discussed in terms of just telling them to consider all

25   the evidence.

1          But obviously we'll consider what the defense

2     produces.  I suspect we're not going to agree to a whole

3     litany of documents that don't relate directly or mention

4     the four bonds here.

5          So on balance, the government's view is, given

6     the defense position, given their objection to this, that

7     as helpful as we would like to be, and as I noted before,

8     this is why we wanted to put the summary charts in, but I

9     understand the ruling, and that we just tell them the

10    Court's not permitted to marshal the evidence, they have

11    what they have, and if the defense -- given the

12    defendants' position, I think that's the safest course

13    here.

14          THE COURT:  Is that what I should do by

15    agreement?

16          MR. PETRILLO:  Yeah.  I think we'd still like to

17    have a few hours to think about it, Judge because of the

18    unusual nature of the request.

19          THE COURT:  Okay.  What I'll do is ask that the

20    jury be brought in, and the alternates will be needed.

21    I'll tell them that we are working on trying to respond to

22    their note as best we can and we'll have an answer for

23    them in the morning.

24          MR. PETRILLO:  Your Honor, I just wanted to ask

25    about bringing the alternates in.  Is that the practice of

 1    the Court?

 2                 THE COURT:  Yes.

 3                 MR. PETRILLO:  I don't think they were involved

 4    in the writing of the note.

 5                 THE COURT:  But I need to keep them involved,

 6    and I'm sure they appreciate it; so, yes, I'd like the

 7    alternates to be brought in.

 8                 We did get yet another note, Court Exhibit 8,

 9    informing us that they wanted a copy of the instructions

10    for each member of the jury; and with your consent, as I

11    understand it, we've supplied them with that.

12                      (Pause)

13                      (Whereupon, the jury entered the

14                      courtroom.)

15                 THE COURT:  Thank you everyone.  I apologize for

16    keeping you waiting with regard to your note.  In this

17    note you ask, "Which tabs in the government and defense

18    binders are associated with the following trades," and

19    then you list the four trades that are referenced in the

20    counts of the indictment.

21                 I've conferred with the parties about how best

22    to respond to this request, and I must tell you that thus

23    far we have been unable to come up with an agreed-upon

24    solution.

25                 I didn't want to keep you waiting wondering if

1   we were simply ignoring your note or when you were going

2   to hear from us.

3              I want you to know that we take your note very

4   seriously and we want to do what we can to be as

5   responsive as possible, and I say that on behalf of both

6   sides.

7              For reasons that I won't go into at the moment,

8   it's a bit more of a challenge than you might think.

9              So I wanted to tell you that and inform you that

10  we'll continue to confer and see if we can't provide you

11  with a more helpful response in the morning, but I don't

12  think we're going to be able to do anything for you at

13  this point in the day today.

14             It is almost 4:15 and it may be that you would

15  just as soon call it a day.  If so, that's fine.  If not,

16  that's fine too.  It's up to you.

17             Just so you know, your schedule for

18  deliberations is really up to you.  If you want to start

19  earlier, that's fine; if you want to stay later, that's

20  fine.  We would of course defer to you.

21             Our standard schedule has been, as you well

22  know, to gather in the courtroom at 9:30 and continue

23  until 4:30.  That doesn't have to be the schedule you use

24  for your deliberations.  If that is a convenient schedule

25  for you, if that's what works best for you, then that's

1      fine.  If you want to adopt a somewhat different schedule,

2      that's up to you.

3                Specifically, if you wanted to start earlier tan

4      that, then that's okay, just let me know.  And if you want

5      to stay later, same goes.  If you'd let me know, that's

6      fine.

7                I'm not suggesting anything one way or the

8      other, I just want you to know that you have the

9      prerogative to decide and to let me know how you want to

10     proceed.

11               Okay?

12               You did ask for a copy of the written

13     instructions for each member of the jury, which is fine,

14     and you should have received or will receive them.  You

15     can't take them home.  You need to leave them here, along

16     with your steno pads, as always, and they will be waiting

17     for you when you return in the morning.

18               Before you depart, if you're so inclined, you

19     could caucus and let me know if you're happy to continue

20     with a starting time of 9:30 or you'd like a somewhat

21     different time.  That's up to you.

22               If I don't hear from you, I assume that you will

23     be deliberating not later than 9:30; okay?

24               All right, thank you.

25                    (Whereupon, the jury left the courtroom.)

1          THE COURT:  We'll stay in session for a few
2     minutes.  Please be seated.
3          Any objection to what I said?
4          MR. NOVICK:  No, Your Honor.
5          MR. PETRILLO:  No.
6          MR. BROWN:  No.
7          THE COURT:  How do you want to proceed?  Do you
8     want to plan on getting back to me with something at some
9     point in time?
10          MR. MUKASEY:  I think we'll meet and confer
11     amongst ourselves tonight and figure out a possible
12     solution.  If there are any documents which are going to
13     be brought forth, we'll let the government know which ones
14     those are.  If there's a proposed instruction, we'll run
15     that by the government and get it to your ever ready law
16     clerk as soon as we can.
17          THE COURT:  Okay, thank you.
18          I guess that's all we can do for now.  If we
19     hear from the jury about a schedule for their
20     deliberations, of course we'll let you know right away.
21               (Proceedings adjourned at 4:18 p.m.)
22
23
24
25

1                    C E R T I F I C A T E

2

3                    In Re: U.S. vs. SHAPIRO

4

5

6          I, Darlene A. Warner, RDR-CRR, Official Court

7   Reporter for the United States District Court for the

8   District of Connecticut, do hereby certify that the

9   foregoing pages are a true and accurate transcription of

10  my shorthand notes taken in the aforementioned matter to

11  the best of my skill and ability.

12

13

14

15

16                   /s/_____

17                   DARLENE A. WARNER, RDR-CRR
                     Official Court Reporter
18                   450 Main Street, Room #223
                     Hartford, Connecticut 06103
19                     (860) 547-0580

20

21

22

23

24

25