Vol. XVII, Page 3090

1               UNITED STATES DISTRICT COURT

2

3           FOR THE DISTRICT OF CONNECTICUT

4

5     – – – – – – – – – – – – – – – x
                                    :
6     UNITED STATES OF AMERICA       :   No.  3:15CR155(RNC)
                                    :
7              vs.                   :
                                    :
8     ROSS SHAPIRO, ET AL,           :
                                    :   HARTFORD, CONNECTICUT
9                 Defendants.   :   June 6, 2017
                                    :
10    – – – – – – – – – – – – – – – x

11

12

                        JURY TRIAL – VOLUME XVIII
13

14        BEFORE:

15            HON. ROBERT N. CHATIGNY, U.S.D.J.

16

17

18

19

20

21                              Darlene A. Warner, RDR–CRR
                                Official Court Reporter
22

23

24

25

```
 1    APPEARANCES:

 2
          FOR THE GOVERNMENT:
 3
               U.S. ATTORNEY'S OFFICE-NH
 4             157 Church Street
               P.O. Box 1824; 23rd Floor
 5             New Haven, Connecticut 06510
               BY:  LIAM BRENNAN, AUSA
 6                  HEATHER L. CHERRY, AUSA
                    DAVID E. NOVICK, AUSA
 7
          FOR ROSS SHAPIRO:
 8
               PETRILLO, KLEIN & BOXER LLP
 9             665 Third Avenue
               22nd Floor
10             New York, New York 10017
               BY:  GUY PETRILLO, ESQ.
11                  JOSHUA KLEIN, ESQ.
                    LEONID SANDLAR, ESQ.
12                  MIRAH CURZER, ESQ.

13        FOR MICHAEL GRAMINS:

14             GREENBERG TRAURIG
               Metlife Building
15             200 Park Avenue
               New York, New York 10166
16             BY:  MARC L. MUKASEY, ESQ.
                    ROBERT S. FRENCHMAN, ESQ.
17                  JEFFREY B. SKLAROFF, ESQ.

18        FOR MICHAEL GRAMINS:

19             GREENBERG TRAURIG
               Metlife Building
20             200 Park Avenue
               New York, New York 10166
21             BY:  MARC L. MUKASEY, ESQ.
                    ROBERT S. FRENCHMAN, ESQ.
22                  JEFFREY B. SKLAROFF, ESQ.

23

24

25
```

1    APPEARANCES (CONTINUED):

2

3        FOR TYLER PETERS:

4            ALSTON & BIRD, LLP-NY
             One Atlantic Center
5            1201 West Peachtree Street
             Atlanta, Georgia 30309-3424
6            BY:  MICHAEL L. BROWN, ESQ.
                  LEANNE M. MAREK, ESQ.
7
             BRAFMAN & ASSOCIATES, PC
8            767 Third Avenue, 26th Floor
             New York, New York 10017
9            BY:  ALEX SPIRO, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          9:00 A.M.

3

4          THE COURT:  Good morning.

5              As first order of business this morning, we need

6    to respond to the jury's note submitted to us at the end

7    of their last day together in which they state that they

8    would like to review the transcripts for Mr. Chao and

9    Mr. Abbas.

10             Our reporter, Darlene, has looked to see how

11   much testimony we're talking about and she finds that the

12   testimony of these two witnesses together totals

13   approximately 550 pages.  Each one testified for

14   approximately a day and a half.

15             How would you like to proceed?

16         MR. MUKASEY:  Good morning, Judge.

17         THE COURT:  Good morning.

18         MR. MUKASEY:  First of all, I think on behalf of

19   certainly everyone on the defense side of the table we

20   should thank Darlene for just outrageous efforts during

21   this entire trial.  I've never seen a trial where only one

22   reporter takes all the testimony all day long without a

23   break.  So she's got the thanks and the appreciation of

24   everybody on our side.

25             That being said, this is a highly complicated,

1    technical, difficult, linguistically challenging trial.

2    So Friday night our side went into the transcripts of

3    Mr. Abbas and Mr. Chao, sent Darlene a bunch of proposed

4    edits.  Darlene didn't pay attention to my email, as I

5    wouldn't on a Friday night either, but went ahead, as Your

6    Honor mentioned, and corrected the transcripts herself.

7    And I think she caught about 60 or 65 percent of what we

8    caught, and some of it is just highly technical things

9    like bond names and numbers.

10          So what we've done is take the edits that we

11   believe are appropriate and accurate and we've given them

12   to the government.  The government's going through them

13   now.  I don't think many of them will be very

14   controversial, but I think once the government can sign

15   off on those we will at least have a transcript that we

16   can do something with, whether it's a read-back or sending

17   them back to the jury or finding out more about what the

18   jury wants.  But I just wanted to address the issue of the

19   accuracy of the transcript first and foremost.

20          As to how to proceed from here, I'm happy to --

21   I know, I think it would -- I'm not sure the jury

22   recognizes that this would be ten hours of read-backs, and

23   I'm not sure what Your Honor's practice is with respect to

24   sending transcripts back once they're corrected.

25          I think on behalf of Mr. Gramins, it would be

1     our request that Your Honor, once we have an accurate

2     transcript, or at least an agreed-upon transcript, find

3     out a little bit more about exactly what the jury wants

4     before we figure out how to proceed.

5                    THE COURT:  All right.

6                    Anything else?

7                    MR. PETRILLO:  Your Honor, have you had the

8     situation before where the transcript itself has been

9     requested by the jury?

10                   THE COURT:  Yes.

11                   MR. PETRILLO:  Do you normally send it back?

12                   THE COURT:  No.

13                   MR. PETRILLO:  Well, I agree with what

14    Mr. Mukasey has said so far and ready to take it from

15    there.

16                   The one concern I have is the jury asked to

17    start at 9:30 and it's now 9:55.  I'm wondering if they

18    should be told soon about what we're doing.

19                   THE COURT:  Agreed.

20                   MR. BROWN:  We have nothing further to add, Your

21    Honor.

22                   THE COURT:  Thank you.

23                   MR. NOVICK:  Your Honor, I gave Katlin a

24    transcript from the Thomas trial where that same issue

25    came up.  The government is fully comfortable with the

1    approach the Court took in that case, an instruction

2    consistent with that.  I cut and pasted back to defense to

3    counsel on Friday.

4              As far as the accuracy of the transcript, we --

5    as Your Honor can see by the binder on the desk, counsel

6    gave us a number of proposed edits.  It's going to take us

7    some time to go through those.  But in the meantime, I

8    will hope that the jury will narrow their request so that

9    we don't have to debate over all of that.

10             THE COURT:  Okay.  Thank you.

11             I think we should bring the jury in and I think

12   I should explain to them, much as I did in the Thomas

13   case, that we're happy to hear from them and we're happy

14   to be of help to them.  I would explain that we're not in

15   a position to provide them with transcripts at this time;

16   that when a jury needs access to the testimony of a

17   witness, we ask Darlene to read back the responsive

18   portions of the witness's testimony, and we're happy to do

19   that here.

20             I would tell them that the testimony totals

21   approximately 550 pages, so it would be helpful if they

22   could identify one or more topics that they're interested

23   in.  At that point Darlene would look for testimony on

24   those topics.  It would take us some time to cull out that

25   testimony, but we would do that, and we would ask them to

1    come back in, at which point Darlene would read that

2    testimony and we would proceed from there.

3              Thus, I would ask them to caucus and get back to

4    us and let us know how they would like to proceed.  If

5    there are topics that they can tell us about, then that

6    would be great; but whatever they need, we stand ready to

7    do whatever we can to assist them.

8              That way they know that we're doing what we can

9    to be helpful and the ball will be in their court to tell

10   us if there are topics, as I hope and expect there will

11   be, that they're particularly interested in.

12             In the meantime, the government can look at the

13   requested edits and we'll see where we are.

14             Is that agreeable?

15             MR. PETRILLO:  It is, Your Honor.

16             MR. MUKASEY:  Yes.

17             MR. BROWN:  Yes.

18             MR. NOVICK:  Yes, Your Honor.

19             THE COURT:  Okay.  Please bring in the jury.

20                  (Whereupon, the jury entered the

21                  courtroom.)

22             THE COURT:  Good morning everyone.  I hope you

23   had a good weekend.  I understand that it's a bit stuffy

24   in the jury room this morning.

25             This building is somewhat elderly.  It's built

1    in early 60's and the HVAC system isn't the best,

2    unfortunately.  But the maintenance people are available

3    to help and we've asked them to be helpful to you.  I hope

4    that it won't get to be too stuffy for you.  Please keep

5    Terri informed and we'll respond as best we can.

6              I understand it's going to be a hot day today

7    and sometimes that poses a particular challenge for our

8    maintenance crew, given what they have to work with, but

9    please don't hesitate.

10             We do have your note stating as follows:  "We

11   would like to review the transcripts for Caleb Chao and

12   Aadil Abbas testimonies for Monday morning."

13             Let me explain to you how our practice works

14   when a deliberating jury seeks access to the testimony of

15   a witness in whole or in part.

16             When in the midst of deliberations a jury wants

17   to have access to a witness's testimony, we are able to

18   provide the jury with what is called a read-back of the

19   witness's testimony.  Our court reporter, Darlene,

20   maintains stenographer's notes of the testimony of each

21   witness who testifies and she is able to read testimony

22   from her notes.

23             So when a jury asks for access to testimony, we

24   have a read-back of the testimony here in the courtroom.

25   We don't provide a written transcript of the testimony,

1    but instead we have a read-back here in open court.

2          At this point in time, I understand that you are

3    interested in the testimony of these two witnesses:

4    Mr. Chao and Mr. Abbas.  I don't know if you're looking

5    for all the testimony of either or both of these

6    witnesses.

7          If that is what you would like, then that's

8    fine.  We can accommodate you by having the testimony read

9    back.  Nothing I say should be interpreted by any of you

10   as a suggestion from me that we're not able to do that.

11   We can do that.

12         If you want to have either or both witness's

13   testimony read back to you in its entirety, we can do

14   that.

15         Please understand that each witness testified

16   for approximately a day and a half.  Darlene tells me that

17   the testimony of both witnesses totals approximately 550

18   pages.  So to read back the entirety of the testimony of

19   each witness would take a couple or three days.  Darlene

20   tells me that each testified for about a day and a half,

21   so to read back the entirety of the testimony of either

22   would take approximately that long.

23         In that context, if there is a topic or if there

24   are topics that you are particularly interested in, then

25   you could tell us and Darlene could search her notes for

1    testimony on those topics.  In that case we would ask the

2    parties to sit with Darlene to review her notes on those

3    topics and in this way we would cull out from her notes

4    the testimony that would be responsive to your request and

5    we would have a read-back of the testimony on those

6    topics.  Depending on what those topics might be, the

7    read-back could be shorter or longer.  It would depend, of

8    course, on the topics that you wanted to review.

9          I want to be clear that we appreciate the work

10   you're doing.  We want to be helpful to you in any way we

11   can.  We want to assist you in doing your best possible

12   work, and whatever you need, we're here to provide as best

13   we can.

14         We defer to you, of course, with regard to how

15   you want to proceed.  What I would ask you to do is please

16   retire to the jury room and consider what you think makes

17   the most sense in the circumstances and what will work

18   best for you.

19         If you would please send us another note letting

20   us know what you would like.  Whatever you want, we're

21   ready to provide, okay?

22         Thank you all very much.

23              (Whereupon, the jury left the courtroom.)

24         THE COURT:  Please be seated.

25         I expect that we'll have another note in the

1    near future.  Hopefully it will give us some topics and at

2    that point I'll ask Darlene to work with you in

3    identifying responsive testimony.

4              Until then, we'll just stand by.

5              (Whereupon, a recess followed)

6              THE COURT:  Where do things stand with regard to

7    our preparation for read-back of testimony?

8              MR. KLEIN:  Your Honor, the defense has

9    designated the -- what we believe to be the relevant

10   portions for both Mr. Abbas' testimony and Mr. Chao's

11   testimony.  We have a disagreement with the government as

12   to how to interpret this note.

13             The defense interprets the request to be for the

14   government and defense examinations that relate to the

15   exhibits that are identified in the note as they pertain

16   to the PPSI trade.  So we interpret this note as

17   requesting the testimony that relates to that trade.

18             On cross-examination, much of the questioning by

19   the government wasn't prefaced by the words "in relation

20   to Government's Exhibit 26A or 26D," but I think it was

21   clear from the questioning that much of the cross

22   pertained to the PPSI trade and to the issues that relate

23   to the specified exhibits.

24             And so that was the basis for us marking the

25   sections of the testimony that we marked.  We think that

1    that's what would be most helpful to the jury.  We think

2    they're trying to understand what is it that the

3    government examined the witnesses about in connection with

4    this trade and what is it that the defense examined the

5    witnesses about in connection with this trade.

6         So we think the most helpful thing for the jury

7    would be to provide the relevant testimony that we've

8    marked.

9         THE COURT:  So your view is that if testimony

10   relates to the trade, it should be read back?

11        MR. KLEIN:  Well, if testimony relates to the

12   issues in 26A, B, D and E in reference to the trade, then

13   they should be read back.

14        So, for example, there is more general testimony

15   about how Mr. Abbas goes about choosing which dealers he

16   works with and more generalized testimony about the HIMCO

17   investment process.  We think that doesn't specifically

18   relate to the PPSI trade and to the issues raised by these

19   particular exhibits.  But then there's testimony about the

20   PPSI model, which we think directly bears on what the jury

21   is asking about.

22        And there's testimony about some of the

23   different factors that HIMCO does and doesn't consider in

24   the course of making investment decisions, and the context

25   for that line of questioning was that Mr. Abbas initially

1      said he would not buy the PPSI bond at 79-02 if he had

2      known the full scope of the -- the full spread that Nomura

3      was taking on the bond.  And then on cross-examination he

4      changed his answer and he said, well, maybe I might buy

5      and there's a non-zero chance that I would buy and it

6      depends on whether I really like the bond.

7              In order for the jury, I think, to understand

8      the full scope of his testimony, I think they need to have

9      that context because he says he often trades without

10     having any information about the spread and he doesn't ask

11     for confirmation, oral representations made about the

12     spread.  And the modeling process and the investment

13     process doesn't include any analysis of what the spread

14     is.  And when he makes the decision, he involves other

15     people at HIMCO, the HIMCO portfolio strategy group and

16     the investment committee.

17             So we think, you know, all of that questioning

18     bears directly on the decision made with respect to this

19     particular bond and the issues that are discussed in the

20     identified exhibits.

21             THE COURT:  And with regard to Mr. Chao's

22     testimony?

23             MR. SKLAROFF:  Yes, Your Honor.  So I think

24     basically the argument would be the same thing.  We

25     cross-examined, perhaps not specifically by specific

1    exhibit number within a specific trade, but more

2    thematically.  And I think we've designated a total of

3    about 35 pages all in for Mr. Chao.  It includes both the

4    government's direct exam regarding the PPSI trade; it

5    includes testimony that went to Mr. Chao's state of mind

6    at the time he was doing the PPSI trade, specifically that

7    he didn't think that he was doing anything wrong.

8            It does reflect also some cross that dealt with,

9    for example, the reasons why Mr. Chao said they engaged in

10   these kinds of practices, the fact that Mr. Chao and

11   Mr. Abbas still actually trade together, even today.

12           So things of that nature that perhaps don't --

13   aren't zeroing in on specific exhibit numbers within

14   specific trades.

15           But I think, in fairness, given the importance

16   of what the jury is about to hear, it's fair and it's

17   appropriate to read all of the sections we designated,

18   together with the fact that it really does take up very

19   little time and relatively few pages.

20           THE COURT:  All right.

21           MR. NOVICK:  Your Honor, we think that the

22   defense position here is not being responsive to what the

23   jury asked for.  They are asking for -- for the Court's

24   information -- and Your Honor, may already know this --

25   Exhibits A, B, D and E are the chats.  They didn't ask for

1    the trade tickets, the trade blasts.  They didn't ask for

2    the defense exhibits.  They asked for the four chats that

3    have to do with the communications between the parties

4    involved in the trades.  And Mr. Brace -- excuse me --

5    Mr. Sunshine of Bracebridge and Mr. Gramins, I think is A

6    and D, and B and E would be Abbas and Chao.

7              So when the government went through its analysis

8    here, Your Honor, we adhered carefully to what the jury is

9    asking for, which is information related to these chats.

10             We did not include, even for direct, things

11   about the trade posts, things about the trade

12   confirmations, anything else.  We cued to what they're

13   looking for, which is the communications back and forth.

14             I think if we go back and we give the jury, for

15   example, pages and pages of information now about, for

16   example, the HIMCO modeling process, they're going to be

17   bothered because that's not what they asked for.

18             And as I understand as a matter of advocacy,

19   that's what the defense would like them to hear to put

20   things in context in their view, but the question is not

21   here, Does the jury get to hear this stuff?  They've heard

22   it.  They have the evidence.  They have the copy of the

23   model back in the jury room.  The question is not keeping

24   them from the evidence.  The question here is answering

25   what they've asked for.

1           By way of another example, counsel has included

2    colloquy with Mr. Chao, the question and answer with

3    Mr. Chao about Litvak and what happened after Litvak on

4    the theory that the testimony about whether he believed

5    this was wrong or not somehow is responsive to what the

6    jury is asking here.  I don't see that, Your Honor.

7           I think that the better course here is to try to

8    be as specific as possible in answering the jury and not

9    inundating them with hundreds of pages of material that's

10   simply not responsive to what they asked for.

11          If they wanted everything related to this trade,

12   they could have asked for everything related to the trade.

13   If they wanted everything that relates to every issue

14   related to these witnesses, including what was their state

15   of mind, they could have asked for that.  They didn't.

16   They asked for very specific things here and I think we

17   should respect that and provide them with what they asked

18   for.  That's what drove the government's analysis here of

19   what to provide.

20          THE COURT:  What standard did you apply in

21   drawing the line?

22          MR. NOVICK:  Sure, Your Honor.

23          So anything that either specifically referenced

24   the exhibit or from a reading of the -- so in other words,

25   if someone said at 20:08:16 you said X, and they didn't

1    specifically mention the exhibit number, we kept that in.

2    But anything that mentioned these exhibits, so any

3    reference that is something that was said in the exhibits

4    or something that was -- or specifically referenced in the

5    exhibit is what we generally drew our -- where we

6    generally drew our line.

7          And counsel says that they cross-examined

8    thematically.  That may be.  We certainly had thematic

9    aspects of the direct examination, but we didn't ask to

10   put those in.  There are plenty of examples of

11   cross-examination that would apply here where they talked

12   about what was said in the chats, in the trades, in these

13   exhibits A, B, D and E.

14         So that's the line we drew, which we think is

15   being respectful of the jury's time and what is being

16   asked for.

17         MR. MUKASEY:  Judge, if I may, asking for both

18   sides of the chat, both chats as they relate to the trade

19   is really asking about the trade itself, right?  The

20   government built up and presented these trades as products

21   of the chat.  So I think that supports our reading of what

22   they're really asking for.

23         And I don't think that what goes back or what

24   comes out during read-back should turn on whether or not I

25   prefaced the question to Mr. Abbas with "As it relates to

1    Government's Exhibit 26A, let me ask you this question."

2    We asked the questions very often without that unnecessary

3    introduction that obviously bear on the chats without

4    specifically referring to the chats.

5              So I think the way the government went about

6    this is probably unduly restrictive.

7              And beyond that, I sort of rest on what

8    Mr. Klein said.

9              THE COURT:  Okay.  As matters stand, how much

10   material does the government think we need to read back?

11   How many pages?

12             MR. NOVICK:  Sure, Your Honor.  I didn't count

13   it, but I eyeballed it for Kaitlin.  I think it's roughly

14   70 pages.

15             THE COURT:  And of that, how much relates to

16   Chao and Abbas?

17             MR. NOVICK:  Can I have one minute, Your Honor?

18   I can do that now.

19                  (Pause)

20             MR. NOVICK:  Roughly 50, 51 pages, Your Honor,

21   for Mr. Abbas and about 21 for Chao.

22             THE COURT:  And the defense?  There's agreement

23   as to that 70, I trust?  And the question becomes how much

24   more?

25             MR. KLEIN:  I think we have about 35ish pages

 1    for Chao and we have about -- eyeballing it, about 120 or

 2    so, 125 pages for Abbas.  So it's about 150, roughly, in

 3    total.  That includes both our assessment of the direct

 4    and the cross-examinations.

 5              THE COURT:  So with regard to Chao's testimony,

 6    the government proffers 20 pages and the defense 35?

 7              MR. KLEIN:  Roughly, yes.

 8              THE COURT:  And with regard to Abbas, the

 9    government proffers 50 and the defense 125?

10              MR. KLEIN:  About.

11              THE COURT:  With regard to the sequence in which

12    the testimony should be read back, any position on that?

13              MR. NOVICK:  I think Mr. Abbas first, Your

14    Honor.

15              MR. KLEIN:  We agree on that, Your Honor.

16              THE COURT:  Okay.  Is it possible to summarize

17    again for me, please, the 70 pages or 75 pages of Abbas

18    testimony that the defense wants but the government thinks

19    is not really properly provided at this point?

20              MR. KLEIN:  Sure.  The government -- just put it

21    into context:  The government's direct, portions of it

22    were focused on these specific exhibits that relate to the

23    price that Abbas ultimately paid for the PPSI bond.  And a

24    lot of the government's questioning and the whole

25    orientation of their direct was geared towards eliciting

1       from Mr. Abbas that if he had known the full scope of the

2       markup that Nomura received as a result of that trade,

3       he would either have not have paid 79-02, or, at a

4       minimum, he would have negotiated more.  But what

5       Mr. Abbas said on direct was that he would not have paid

6       the 79-02 had he known that.

7               So these what the government's direct was

8       building up towards.  And on cross-examination we elicited

9       questions about whether he has any recollection about this

10      trade.  He doesn't.

11              So then we had to elicit questions about what

12      was the investment process that you followed during this

13      timeframe that would have related to this trade?  So there

14      was a series of questioning about that.

15              And there were questions relating to whether he

16      trades sometimes without having any information about the

17      dealer's markup.  When he does get information about the

18      dealer's markup, does he ask for written confirmation?

19      Does he ask to look at the chat communications that the

20      dealer's having with the other side of the trade?

21              So there were questions going to those sorts of

22      issues and there was questioning about the model and the

23      modeling process and the investment process at HIMCO,

24      again in relation to the PPSI trade.

25              And on cross-examination that was building up

1    towards his statement which he made on cross that he may

2    have paid 79-02.  He can't say that he wouldn't have paid

3    79-02.  It depends how much he would have liked the bond.

4              And he admitted that his investment process does

5    not incorporate any sort of assessment about the dealer

6    markup, and that very often he doesn't even have

7    information about the dealer markup when he trades.  And

8    yes, he confers with other people at HIMCO.  And there's a

9    document showing that he in fact did that with respect to

10   this particular trade.  And yes, it has to be reviewed by

11   the portfolio strategy group and the investment committee.

12   And he said that sitting here today he thought that was a

13   good price based on the analytics, and that he wouldn't

14   have done a trade if it wasn't in the interest of his

15   investors.

16             So all of that questioning goes to the heart of

17   the issue the government was getting at on their direct

18   examination, which is whether or not he would have still

19   paid the 79-02 had he had knowledge of the allegedly

20   concealed portion of the markup.

21             So we tried to cue relatively closely to the

22   testimony that related just to this trade and to the

23   issues that relate to the exhibits from the trade, but I

24   think that's what the jury was asking for when they

25   originally asked for cross -- direct and cross for these

1    two witnesses.  And when asked whether they could be more

2    specific, they identified direct and cross related to

3    these exhibits which cover the trade in reference to the

4    trade itself, as opposed to -- presumably as opposed to

5    other securities that may come up in the context of

6    exhibits.

7              So I hope I've answered the Court's question.

8              THE COURT:  Yes, thank you.

9              And Mr. Novick, if I allowed the defense

10   request, that is if we read back the testimony they

11   identify as relating to the PPSI trade, where does that

12   leave the government?  There's yet more that the

13   government would want to include?

14             MR. NOVICK:  I'd have to go back and look.

15   Obviously, we looked at this with a different lens, trying

16   to be respectful of what the jury actually wanted, which I

17   don't think -- I mean, all of these things that Mr. Klein

18   is talking about have exhibit numbers.  Defendants'

19   Exhibit, I think, 25 is the model.  They didn't ask for

20   anything related to that.

21             They know it's there.  They've heard the

22   evidence.  They've heard the testimony.  They could ask

23   for it.  We don't know what they're doing right now.

24   We're trying to be helpful to them, but this is, I don't

25   believe, helpful.

1          It's not a question of ultimately prejudice;

2     it's really a question of efficiency and being respectful

3     of what the jury's looking for, and I think this is

4     clearly not what they're looking for.

5          In terms of having asked for the transcript

6     initially, obviously that was to get at a particular

7     thing.  They could have asked for -- and Your Honor made

8     it very clear in your instructions to them, that they

9     could have asked for the entirety of the witness's

10    testimony being read back, compared to what happened in

11    the Thomas case where they came back with a very narrow

12    question after having been asked this.

13         So I think, yeah, we'd have to go back and

14    relook at this.  But again, I think all of this is far

15    beyond the scope of what they've asked for.  So I would

16    object to doing that and ask that we try to get something

17    that's closer to what they are looking for here.

18         THE COURT:  Okay.  Well, I'm not inclined to ask

19    the jury for clarification unless you think I should, and

20    if you think I should, then I'll consider your views.

21         If we refrain from seeking clarification, we're

22    left to make a judgment about what they want to hear.

23    It's impossible to be sure.

24         As I read their note, they want to hear

25    testimony relating to the matters encompassed by the chat.

1    They want to hear how the government examined these

2    witnesses and they want to hear how the defense

3    cross-examined these witnesses, presumably because they

4    want to have a clearer understanding of what happened and

5    why it happened.  This bears on materiality, a key issue

6    in the case, as well as intent.

7            I don't think that we should limit the readback

8    to questions and answers that reference these exhibits

9    explicitly.  I think that's an easy call.  Nor do I think

10   we should limit it to questions and answers that are

11   confined to the chats by way of an explicit reference to

12   the chats.

13           I think that the better approach is to apply a

14   test that asks whether, in substance, the question and

15   answer relate to what is discussed in the chats.  If it

16   sheds light on that, then I think we should include it.

17   If not, then I think it's probably extraneous.

18           I think the jury wants the testimony because the

19   exhibits themselves, even in the context of the jurors'

20   notes -- and I know there are a number of jurors who took

21   extensive notes -- is not sufficient for their purposes at

22   the moment.  They want to hear again how the government

23   approached it and how the defense approached it.  That's

24   my reading of their note.

25           MR. MUKASEY:  Okay, Your Honor.  We will take a

1    look back at it.  I do think that in light of the number

2    of pages that we're talking about here, that it may be

3    worthwhile to seek clarification from the jury as to what

4    they want, because again -- we respect, obviously, Your

5    Honor's ruling and we'll proceed accordingly -- I think

6    it's going to take some time to get to what the margins

7    are.  Because I do think that, for example, talking about

8    Litvak is far beyond what the margins, even a generous

9    reading for the defense is, getting into those areas was

10   not something that was implicated here.

11          What we -- but this may be worthwhile, given the

12   difference between the length of time required to read,

13   say, 50 pages versus 120 pages, to ask the jury for

14   clarification.  We could propose something in the next few

15   minutes as to what they think perhaps could be said to the

16   jury to drill down exactly what they're looking for.

17          THE COURT:  Comments?

18          MR. KLEIN:  We would prefer to go with the

19   approach that the Court outlined.  We think that the jury

20   is asking for information about the way the government and

21   the defense approached this particular trade and the

22   issues identified by these exhibits.

23          They've given us clarification.  They've used

24   the words "related to."  They didn't say "testimony

25   mentioning these exhibits only."

1           And I think that if we are very far off and wide

2      of what they're requesting, presumably they'll send us

3      another note indicating that that's not what we wanted.

4           But I think at this point it would be far

5      preferable to gear the testimony and start getting it read

6      back to them.

7           THE COURT:  Okay.  What about giving the jury an

8      update as to where we stand?  Any thoughts on whether we

9      should do that?

10          MR. NOVICK:  I think it's respectful to the

11     jury, Your Honor.

12          MR. KLEIN:  That's fine, Your Honor.

13          THE COURT:  Okay.  Specifically, I propose to

14     bring them in and tell them what we're doing and tell them

15     that we anticipate that we're going to have a significant

16     read-back for them with regard to both of these witnesses,

17     without trying to be more specific.

18          MR. NOVICK:  In that vein, Your Honor, would

19     Your Honor be amenable to some -- my issue is this, Your

20     Honor, the government's issue is this:  The point is they

21     obviously didn't want to hear three days' worth of

22     read-back.  I don't know how much read-back they want to

23     hear or contemplated hearing.  120 pages, I don't

24     remember.  I note Darlene has said in the past how many

25     pages per -- but it takes a long time.

1          And then once we ring that bell, it can't be

2     un-rung.  In other words, the expense of time here, and

3     the jury's time, is already spent.

4          I think that it would be worthwhile in the

5     context of bringing them in and giving them an update

6     saying, Here's what we're endeavoring to do.  We're not

7     completely sure we understand what you're looking for.

8     Let me give you an option or opportunity to clarify again.

9     We can take five minutes and come up with what we think

10    would be appropriate.  But I think it's worthwhile, given

11    that -- yes, they can come back looking for more, but

12    that's only if we give them less in the first place.

13    We're contemplating giving them the ocean for now, whereas

14    I think they may appreciate the opportunity to be more

15    specific.

16                    (Pause)

17              THE COURT:  And what about the possibility of

18    doing a read-back of Mr. Chao's testimony first?  I mean,

19    at that rate, even if we go with the defendants' request

20    of 35 pages, we're talking about.

21                    (Pause)

22              MR. NOVICK:  The government's issue with that,

23    Your Honor, is the testimony came in in that direction

24    because -- and the way the questions were posed to

25    Mr. Chao with the exhibits that were used, some had

1    assumed that the thing had been introduced by Mr. Abbas in

2    the first place.  We built the chart through Mr. Abbas.

3    So that could be problematic.

4           I also think we would -- obviously, we were at

5    20 pages and the defense was at 35 and not all of that has

6    to do with this particular dispute.  As I think I said

7    before, there's a broader issue there with regard to what

8    the defense is asking for.

9           But in terms of order of operations, we agree

10   with the defense that the -- since the issue was

11   introduced through Abbas, or the trade and the exhibits,

12   it would make sense to do that first.  But obviously, I

13   defer to the Court's discretion.

14           THE COURT:  Okay.  You asked for five minutes to

15   come up with some language?

16           MR. NOVICK:  To ask for some more specificity,

17   Your Honor.  We could try to do that right now.

18           THE COURT:  What would you have in mind?

19           MR. NOVICK:  I'm going to draft -- we'll draft

20   something, but just essentially to say, You have asked us

21   for -- whatever the note reads -- and we want to make sure

22   that we are being as responsive to you as possible.  Is

23   your request for material -- or excuse me -- testimony

24   that relates specifically to these four exhibits that

25   you've requested?  Are you also looking for testimony

1    relating to any other exhibits that relate back to this

2    trade.  I don't know.  Again, I could -- Or the trade in

3    general, or is your request related to these four

4    specific -- these four particular exhibits?

5            THE COURT:  So the government thinks it would be

6    best that I did seek clarification at this time?

7            MR. NOVICK:  Yes, Your Honor.

8            THE COURT:  And you would suggest that it be

9    framed that way?  In other words, in trying to decide what

10   testimony is responsive to your request, members of the

11   jury, we need to know whether you want testimony that

12   relates specifically to these exhibits, or whether you're

13   interested in testimony that relates to this trade --

14           MR. NOVICK:  Yeah.

15           THE COURT:  -- whether it specifically refers to

16   these exhibits or not?

17           MR. NOVICK:  Sorry, Your Honor.  Just one

18   moment.

19                (Pause)

20           MR. NOVICK:  I think that's -- yes, Your Honor.

21   I will say that in the government's -- I also think that

22   some of the passages -- I haven't gone through all of them

23   that the defense had proposed, but some even go beyond the

24   trade itself, in our view.

25           But as a first order of business, I think that

1    that would be helpful.

2              MR. KLEIN:  We would object to that approach,

3    Your Honor.  I think that whether the phraseology is

4    "specifically relates to" or "pertains to."  Anything

5    short -- I mean, any formulation that encompasses the

6    concept of relating to these exhibits, we would read as

7    necessarily encompassing the concept of relating to the

8    issues raised in these exhibits and our position would be

9    the same.

10             THE COURT:  All right.

11             MR. SPIRO:  We would object as well, Your Honor.

12             THE COURT:  I'm sure you would.  I assume that's

13   an objection for everybody.

14             Terri, would you please check with the jurors.

15                 (Pause)

16             THE COURT:  Would you please check and let me

17   know the status of the jury's lunch.

18             THE CLERK:  It just arrived.

19             THE COURT:  All right then.  Why don't we plan

20   on asking the jury to come in.  Their lunch just this

21   minute arrived?

22             THE CLERK:  They're opening it now.

23             THE COURT:  Why don't we plan on having them

24   come into the courtroom in an hour.

25             That gives you some more time to think about

1   what you want to do.  I think it behooves everybody to

2   think in terms of what makes sense for the jury.  I think

3   that we want them to continue to perform their service in

4   the best possible way.

5           I'm a little concerned that I've received a

6   number of notes now and my sense is I haven't really given

7   them very much in return.  I don't want to be overly

8   concerned about the risk of implying that they're failing

9   to communicate adequately or they're failing to approach

10  this properly, and I'm also concerned about just keeping

11  them waiting.

12          So I think if it's possible to come to an

13  agreement, that's what we should do.  If we can't, we

14  can't.

15          But please also bear in mind that you can take

16  as long to debate on this than it takes to read it back.

17          In any event, we'll be in recess until 2:15.

18              (Whereupon, a recess followed.)

19          THE COURT:  My question is whether it's possible

20  for us to get started with the read-back that would be

21  agreeable to both sides and get the jury in the courtroom

22  listening to testimony.

23          The parties want Abbas testimony first, okay.

24  The government has designated 50 pages.  The defendants,

25  125.  What are the 50 pages that are agreed upon?  I trust

1    there are 50 pages that are agreed upon.  Yes?

2              Would that be Abbas's direct testimony?  Where

3    would I find that.

4              MR. NOVICK:  We emailed it to Katlin, Your

5    Honor.

6              THE COURT:  I just got it.

7              MR. NOVICK:  I'm sorry, Your Honor.

8              Everything that is on our list is on the defense

9    list, Your Honor, and it's both direct and cross.

10             THE COURT:  Should we start with the Abbas

11   direct?  I guess that could be done without fear of

12   disagreement?

13             MR. NOVICK:  So the issue, Your Honor, is we

14   obviously cut ours because we thought that that was what

15   was being responsive.  The defense asked -- agreed to all

16   of the direct because in their theory everything -- not

17   all the direct, but all the direct related to the PPSI

18   trade at large.  What we had asked for, as I think I

19   explained earlier, was basically just the parts related to

20   the trade itself.

21             So, yes, we agree as to the passages the

22   government asked for.  But if the defense is going to ask

23   for everything related to the PPSI trade, there may be

24   more that we would want.

25             We could start with this, but I don't know if

1    it's the most efficient thing.

2             If you just give me one minute, Your Honor, I

3    think I could talk to counsel.

4             THE COURT:  Sure.

5                  (Pause)

6             MR. NOVICK:  This is my concern, Your Honor,

7    is -- I mean, so we -- the defense had asked for, from

8    direct, for example, page 101, line 25, to page 108, line

9    13; and then page 116, line, 8 to page 158 --

10            THE COURT:  You know what, Mr. Novick, I can't

11   follow you because what I have doesn't seem to correspond

12   to what you have, and I think what I need to do is, I need

13   to see what you want and I need to see what the defense

14   wants and I need to look at it and decide what to do; and

15   I don't have it.

16            So could you give me what you want?

17            MR. NOVICK:  Yes, Your Honor.

18            THE COURT:  I'm sticking to Abbas and I'd like

19   to get started with the jury, so if you have something

20   from the first day of his testimony that we can start

21   reading, that would be good.

22            MR. NOVICK:  Your Honor, may I approach?

23            THE COURT:  Sure.

24            Do you have the actual transcript?

25            MR. NOVICK:  No, but I can get that obviously,

```
 1    Your Honor.  We hadn't finished going through the defense

 2    errata list which they gave to us this morning, the

 3    mistakes that they --

 4              THE COURT:  Here's what I want you to do:  I

 5    would like you to have the pages that you want Darlene to

 6    read and I'd like the pages that the defense would like

 7    Darlene to read so I can look at them and decide what to

 8    do.

 9              Without that, I'm really kind of in a bad place.

10              MR. NOVICK:  It will be done, Your Honor.

11              THE COURT:  And the sooner the better.

12              MR. NOVICK:  Understood.

13              (Whereupon, a recess followed).

14              THE COURT:  Looking at your respective lists, it

15    appears to me that we could actually accomplish something

16    with the jury essentially by agreement, and let me tell

17    you why I say that.

18              Looking at the testimony of Mr. Abbas from

19    May 18, it appears to me that the government is looking

20    for approximately 41 pages of direct testimony and the

21    defense 49 pages of direct testimony.  Unless I'm missing

22    something, that's the way things stand at the moment.

23              So the question I would have for you is:  Why

24    shouldn't we bring in the jury and have Darlene begin

25    reading that testimony which both sides want read?  Given
```

1    that they sent us this note last week and wanted to hear

2    from us at 9:30 this morning and that it's now quarter to

3    3:00.

4              MR. NOVICK:  I one hundred percent agree, Your

5    Honor, we should be responsive to them.

6              I think the issue counsel and I were trying to

7    do just now is to give -- to do what the Court asked,

8    which was to mark up a copy of the transcript with the

9    differences so the Court would see them.

10             I think the issue is obviously we asked for 41,

11   they asked for 49, and part of it depends on sort of how

12   the Court rules with regard to some of the other passages;

13   but if the Court wants to start by reading the 41 pages or

14   the 49 pages, whatever the Court wants to do.

15             THE COURT:  Don't you think that makes sense?  I

16   mean, worst case we read an extra eight pages, but that's

17   better than sending them home without having done

18   anything.

19             MR. MUKASEY:  We agree, Judge.

20             In order to be most efficient and start the

21   reading, if there are errata or edits that we -- again,

22   the government hasn't had a chance to convey their edits

23   to Darlene -- we can keep a note of them perhaps, or do

24   you want us to point it out during the reading?

25                      (Pause)

1            THE COURT:  Looking at the government's list, it

2    says Abbas begins page 102, line 14; and looking at what

3    has been handed to me, page 102, line 14 says the

4    following quote "page of 26B."

5            MR. NOVICK:  Sorry, Your Honor, what I have is

6    102, line 14, begins with a question "So let's take a look

7    at Exhibit 26B."  I think "page of 26B" is line 24, at

8    least in the copy that we got from Darlene last night.

9            THE COURT:  I guess we don't even have the same

10   pages to work from at this point.

11           MR. MUKASEY:  We have the same ones the

12   government has.

13           MR. NOVICK:  I think there was an earlier, when

14   we got the roughs day by day -- I know Darlene fixed up

15   some stuff over the weekend, and I think there was slight

16   pagination difference in that, maybe by -- in this case it

17   looks like ten lines.

18           THE COURT:  Well, since the parties have the

19   same pagination, can we agree that the read-back can begin

20   at page 102, line 14?

21           MR. NOVICK:  I think that the defense, Your

22   Honor, was seeking to begin at 101, line 25.

23           THE COURT:  Can we do that?

24           MR. NOVICK:  That's fine.

25           THE COURT:  Okay.  We'll start at 101, line 25;

1    and why don't we say that we'll go through 158, line 18.

2                    If you look at those pages, is there a problem

3    with having Darlene simply start the read-back?

4                    People are concerned about errata?  As I look at

5    it, I don't see much in the way of errata, if anything at

6    all.

7                    MR. MUKASEY:  If I could just point out two very

8    quickly?

9                            (Discussion off the record)

10                           (Whereupon, the jury entered the

11                            courtroom.)

12                   THE COURT:  Good afternoon, everyone.

13                   I want to apologize to you for the delay in

14   responding to your note.  Of course we received your note

15   promptly informing us that you were looking to hear the

16   government's direct and the defendants' cross-examination

17   of Mr. Chao and Mr. Abbas relating to Government's

18   Exhibits 26, A, B, D and E in reference to the so-called

19   PPSI trade.

20                   On receiving your note, I shared it with the

21   parties and we undertook to identify the testimony that

22   would be responsive to your request, and I imagine from

23   your perspective that's something that shouldn't take a

24   long time; but let me explain that in fact it is not

25   something that is readily accomplished in a short time.

1                First of all, it's necessary to try to

2      understand exactly what you're looking for, and this is

3      not a reflection on you at all, but people can interpret

4      your request broadly or narrowly.

5                As you might imagine, reasonable people could

6      suggest that in light of your request, we should give you

7      all of the testimony on direct and cross-examination that

8      relates to the PPSI trade.  That would be what might be

9      thought of as a broad reading.

10               Another view might be, well, the jurors refer us

11     very specifically to these four exhibits, and unless the

12     testimony refers to one of those exhibits, we're going

13     beyond the scope of what the jury needs.

14               So it's necessary for me to try to come up with

15     what seems like the best interpretation and understanding

16     of your note, and at that point it becomes necessary for

17     Darlene to go into her record, her stenographer's notes,

18     to pull out the testimony that seems to be responsive

19     within the interpretation or understanding that the note

20     has received.

21               Then once Darlene has done that it, becomes

22     necessary for the parties themselves to look at the

23     testimony and to decide whether testimony is within or

24     beyond the scope of your note as I have interpreted it.

25               Forgive me for going on at this length, but I

1    want you to understand that we have been busy.  It's not

2    that we don't respect and appreciate what you're doing;

3    believe me, the opposite is true.

4              So, where are we now?

5              We have testimony from Mr. Abbas that Darlene is

6    going to read back to you.  This will be testimony by

7    Mr. Abbas on direct examination.

8              After we have provided you with that read-back,

9    depending on what time it is, we may be able to proceed to

10   cross-examination of Mr. Abbas and give you a read-back on

11   that as well.  I'm not sure at the moment.  But if we

12   aren't able to do that this afternoon, we'll do it first

13   thing in the morning.

14             I'm assuming that you remain interested in

15   hearing this testimony, and if I'm mistaken about that,

16   please don't hesitate to let me know.  We don't want to do

17   anything that is not helpful to you and not efficient and

18   productive.

19             But trusting that you remain interested in

20   hearing this read back, Darlene will now give you

21   Mr. Abbas' direct testimony relating to the so-called PPSI

22   trade, okay?

23             You shouldn't expect this to be a dramatic

24   reenactment.  Darlene will do her best to read her record

25   accurately; and that said, I'll turn it over to Darlene.

1           (Record read as requested)

2           THE COURT:  Thank you, members of the jury.

3           (Whereupon, the jury left the courtroom.)

4           THE COURT:  Looking at your lists, it appears to

5   me that the parties are in agreement with regard to the

6   first 16 pages or so of the cross-examination.

7           MR. NOVICK:  First six pages we're in agreement

8   with, Your Honor, 159 to 166.

9           THE COURT:  Okay, yeah, so it's seven pages.

10          MR. NOVICK:  Yes, Your Honor.

11          THE COURT:  Okay.  And why shouldn't we stop

12  there?

13          MR. KLEIN:  Your Honor, the questioning on cross

14  that begins on page 159 and runs into 166 is aimed at the

15  issue of whether or not Mr. Abbas would have paid 79-02.

16  He just testified he would not.

17          THE COURT:  That can come in by agreement.

18          MR. KLEIN:  I think you're asking me why should

19  we stop there?

20          THE COURT:  Correct.

21          MR. KLEIN:  And my response is from that point

22  on, the questioning continues along that very issue.  All

23  of the questioning that follows goes to that issue of

24  whether or not he would or wouldn't have paid 79-02.

25          And so he says -- at the outset he says that he

1    doesn't recall all the circumstances; that he's

2    interpreting the document; that if he really liked the

3    bond,  there's a possibility, a non-zero possibility that

4    he would have paid the same amount.

5          And then the questioning continues with regard

6    to how he goes about making investment decisions around

7    that time period.  What are the different factors that,

8    you know, he considers.  And it all comes back to that

9    question.

10          We're just continuing to peel the layers back on

11    whether or not he would have paid that amount.

12          THE COURT:  Okay.

13          MR. KLEIN:  I mean, if we're on page 170, for

14    example, we ask if a bond is offered at 80.  So he's

15    answering there.  So again, if he thinks it made sense to

16    buy it at 79, he's talking about what he would do.

17          And, you know, I think as it continues, we're

18    still talking about the same point.

19          THE COURT:  Okay.

20          (Discussion off the record)

21          MR. KLEIN:  We're starting at page 159, line 21

22    and the first stopping point would be page 181, line 20.

23          MR. BROWN:  That's after line 20.

24          (Pause)

25          THE COURT:  I think what we ought to do is read

1   the cross-examination that both sides agree should be

2   presented to the jury; that is from page 159, line 21,

3   through 166, line 16.  Then we can be done with that for

4   today and we can decide what we want to provide tomorrow,

5   okay?

6               So why don't we ask the jury to come in.

7               MR. MUKASEY:  Judge, can we make clear to the

8   jury that there will be more coming tomorrow?

9               THE COURT:  Yes.

10                    (Whereupon, the jury entered the

11                    courtroom.)

12              THE COURT:  Thank you, members of the jury.

13   Darlene is going to read back the testimony of Mr. Abbas

14   on cross-examination.  We're going to get started on that

15   read-back this afternoon and then we'll adjourn and we

16   will continue with the read-back tomorrow morning.

17              We'll have further testimony for you with regard

18   to Mr. Abbas and then also Mr. Chao; okay?

19                    (Record read as requested)

20              THE COURT:  Thank you, members of the jury.

21                    (Whereupon, the jury left the courtroom.)

22              THE COURT:  I will get ahold of the transcripts

23   for the rest of the cross-examination as well as the

24   redirect and recross of Mr. Abbas and I'll look at your

25   lists and I'll consider what we should do and I'll do the

1    same with the testimony of Mr. Chao; and hopefully we'll

2    be in a position to proceed with the rest of the read-back

3    first thing in the morning.

4              Anything further for tonight?

5              MR. PETRILLO:  Your Honor, would you like us

6    here at 9:00 in case there are any questions you would

7    have about that?

8              THE COURT:  That would be good.

9              MR. PETRILLO:  Thank you.

10             THE COURT:  Thank you.

11                (Proceedings adjourned at 4:17 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      C E R T I F I C A T E

2

3                    In Re: U.S. vs. SHAPIRO

4

5

6          I, Darlene A. Warner, RDR-CRR, Official Court

7    Reporter for the United States District Court for the

8    District of Connecticut, do hereby certify that the

9    foregoing pages are a true and accurate transcription of

10   my shorthand notes taken in the aforementioned matter to

11   the best of my skill and ability.

12

13

14

15
                    /s/_____
16
                      DARLENE A. WARNER, RDR-CRR
17                      Official Court Reporter
                      450 Main Street, Room #223
18                    Hartford, Connecticut 06103
                         (860) 547-0580
19

20

21

22

23

24

25